## Dennison's Appeal.

A. having purchased from a vendee of the sheriff a life-estate in certain lands, confessed a judgment to B., which was duly entered. He then became the purchaser in fee, from a different vendor, of one-half of the land whereon his life-estate was secured, and confessed a judgment to C., which was duly entered.. Subsequently all his right, title, and interest in this land was sold upon execution, at sheriff's sale, and in distributing the proceeds of that sale, it was held by this court—

1. That A. having become the owner of one-half of the land, which he had purchased in fee by a subsequent, separate, and independent contract from that by which he acquired his life-estate in the same land, the judgment in favour of B. did not attach upon A.'s fee in the land in preference to the judgment of C.

2. That B.'s judgment was to be regarded as a lien on the life-estate only, and was to be paid as such.

3. That in estimating the value of the life-estate in the part of the land sold, there was no objection in this case to the adoption of the rule which prevails in England, to estimate the value of the life-estate at one-third of the value of the fee-simple estate which includes it.

4. That A.'s life-estate in the one-half of the land of which he was not the owner of the fee, did not pass by the sheriff's sale of all A.'s right, title, and interest in that land, and could not so pass in consequence of the provisions of the sixth, seventh, and eighth sections of the act of 13th October, 1840, relating to Orphans' Courts, &c.

THIS was an appeal from the decree of the court of Common Pleas of Luzerne county, by Charles Dennison, assignee of Mahlon Labar,

in the matter of the appropriation of the money arising from the sale of the real estate of John W. Jenkins.

The material facts in this case are distinctly stated in the opinion of this court.

*Butler*, for the appellant, contended that the money belonged to the judgment of Mahlon Labar, that being the first lien. The Stark judgment was entered before the acquisition of the fee by Jenkins, and a judgment does not bind after-acquired real estate. Colhoun *v.* Snider, 6 Bin. 135. Labar's judgment was the first after the purchase of the one-half of the fee, and is therefore the first lien. But it is said the life-estate was merged in the fee, and that the lien on the life-estate marched on with the increase of interest, and takes precedence of a subsequent judgment. The dispute here is about the proceeds of the value of one-half of the fee. The half of the life-estate is still remaining for Stark's judgment. It cannot be sold, but can be sequestered. The other half is merged in the fee—the less, with all its incidents and dependencies, is swallowed up in the greater, the incidents to which are not affected. To argue otherwise involves the absurdity of including the greater in the less. Besides, the purchase of the fee was not an enlargement of any estate previously held by Jenkins; it was a new acquisition of a new estate. The life-estate was a perfect estate—perfect in kind, and incapable of enlargement. It was not an incipient right, or equitable or imperfect title, such as a pre-emption right, or a Connecticut title, not fully recognised by law at the entry of the judgment, but which afterwards ripened into a perfect title, which was the case of Carkhuff *v.* Anderson. The purchase of the fee was a new estate acquired, and not the expansion, or enlargement, or rendering perfect an old one. The case of Love *v.* Jones, 4 Watts, 465, proves that a judgment entered against a man, who holds land on contract, must give way to a judgment entered for purchase money, entered after the title became vested by deed in him. The argument, that to give the money to Labar would be enabling Jenkins, by his act in purchasing the fee, to deprive the creditor of the benefit of his lien, cuts both ways; because, to establish the principle contended for on the other side would give Jenkins, by the act of purchase, the power of divesting the lien of a judgment or mortgage entered after the purchase, though given for the purchase money.

*Harrison Wright*, for the appellee.

The doctrine of Colhoun *v.* Snider, that a judgment does not bind after-acquired real estate, does not apply here, because it is not so much to be considered "after-acquired real estate" as real estate of

Jenkins when the judgment was entered, in which he afterwards acquired a greater estate. The case of Love *v.* Jones is a stronger case—there was equity: the lien was for purchase money. Labar's judgment was a lien too for purchase money, but he has already set apart for him what a whole share brought at sheriff's sale. What equity has he? What he put in he has taken out, and now asks that the lien for purchase money of the life-estate be postponed in his favour. But the principle that is to govern has been directly settled in the English courts. If tenant in tail mortgage, confess a judgment, or acknowledge a recognisance, and then suffer a common recovery, this shall let in the mortgage, the judgment, or the recognisance, as the case may be; and, after recovery, they will follow the lands in the hands of a bonâ fide purchaser. Pigot, 120; 2 Cru. 287. If it were not so, tenant in tail could, by fiction of law, convert his estate into a fee, and in so doing discharge it of liens. The same may be said of tenants for life. 2 Black. 362. Stark took his judgment to secure the purchase money for the life-estate in one-tenth; Jenkins afterwards acquired the fee in a moiety of that tenth—does Stark's judgment advance, eo instanti, with the acquisition and attach to it? or the life-estate, upon which only he held lien, being swallowed up, is his lien lost? If one convey lands to which he has no title, but afterwards obtains one, it shall enure to the benefit of his vendee. If judgment lien attach upon an imperfect title, that is afterwards perfected, the lien marches along with, and fastens upon the new acquisition. A pre-emption right bound by a judgment, if title be completed, goes along with the perfected title. Carkhuff *v.* Anderson, 3 Bin. 4; Richter *v.* Selin, 8 Serg. & Rawle, 425; Lynch *v.* Dearth, 2 Penna. Rep. 101; Ely *v.* Beaumont, 5 Serg. & Rawle, 124. The principle of these cases, but little extended, covers the one at bar. Had Jenkins executed a mortgage, after his Stark purchase, on two-tenths of the tract, and afterwards acquired the fee to the one, and, after the mortgage, he had confessed judgment, the mortgage would have taken first, on the principle before stated. If Philan Wilson and wife had taken a lien for their purchase money, they could with conscience and equity, perhaps, contest the application; but how Labar can, I do not perceive. The clear policy of the law is to extend the doctrine of the decided cases to this, and in this way the liens upon life-estates can be preserved; and they must be held to advance or be divested—for how is it possible to sell the life-estate and the fee, when vested in one person, and then divide the recovery? How is the value of the life-estate to be got? Certainly, by no rule that will ever operate justly.

The English cases before referred to, and the further cases collected

in Fonblanque's Equity, b. 1, ch. 6, sect. 17, 5 Cru. Dig. 432, ch. 9, appear decisive of this question. Justice Duncan, who doubted the law of Colhoun *v.* Snider, says, in Richter *v.* Selin, "I never would extend the rule beyond its letter." A caution not to be hastily disregarded, as it must be, if the decree in this case is not affirmed.

The opinion of the court was delivered by KENNEDY, J.

From the facts of the case, as admitted by the parties and reported by the auditor, it appears that John W. Jenkins, from the sale of whose real estate the money in the court below was raised, and in regard to he appropriation of which the contest has arisen, became entitled, by descent on the 9th of January, A. D. 1839, on the death of his father, Benjamin Jenkins, to one undivided tenth part of a tract of land, situate in Luzerne county, of which the father died seised and intestate, leaving ten children, to whom it descended equally as tenants in common, under our act of Assembly. On the 22d of July, 1841, John W. Jenkins purchased of Henry Stark, who purchased the same previously at sheriff's sale, the life-estate of Philan Wilson, the husband of his sister Elvina, in another undivided equal tenth part of the said tract of land; and on the 14th of August, A. D. 1841, he purchased the fee-simple estate in the one-half of this latter undivided equal tenth part of the said tract. And again, on the 5th of October, 1841, he purchased the fee-simple in a third equal undivided tenth part of the said tract of land, from Mahlon Labar, and Adah his wife, another daughter of the said intestate, in whom the same became invested by descent. He had no other interest in the tract than what was thus acquired. On the 11th of March, 1841, Osterhart and Jackson, who assigned to Eckel, Spangler & Koignal, obtained a judgment in the Court of Common Pleas of Luzerne county against John W. Jenkins, which was regularly revived afterwards on the 13th of November, 1843, when the debt and interest due thereon amounted to $245 28. At the time of the sale, the debt, interest, and costs amounted in all to $292 89. On the 22d day of July, 1841, Henry Stark obtained a judgment against John W. Jenkins for $350, besides costs of suit, which was given to secure the payment of the consideration money, which was to be paid for the life-estate. And again on the 18th of November, 1841, Mahlon Labar obtained a judgment in the same court against the same, for $500, besides costs of suit. In 1844, all the interest which John W. Jenkins had in the said tract of land was seized in execution, and sold by virtue of judicial process, sued out on the judgment of Osterhart and Jackson, against him, for $785. This money was brought into the court below by the sheriff for appro-

priation; and for that purpose the court appointed an auditor. The auditor applied $292 11 of the money, first, to the discharge of the debt, interest, and costs, in full, due upon the judgment in favour of Osterhart and Jackson, it being the earliest lien upon that interest in the land, which the debtor derived immediately by descent from his father, the intestate. And the money arising from the sale of it, when apportioned among the several interests vested in the debtor, liable to be sold under execution, being more than sufficient to satisfy it, and leaving a surplus of $21 89 to be applied to the judgment of Henry Stark, which is the next lien in the order of time. To this latter judgment the auditor applied not only these $21 89, but the further sum of $157, being that proportion of the purchase money which was to be regarded as arising from the sale of the fee-simple interest, in the one-half of the equal undivided tenth part of the land vested in the debtor, after deducting therefrom $5 for his charge of auditing. The residue of the purchase money being $309, after deducting therefrom $10 as a further charge by the auditor, he appropriated to the judgment in favour of Mahlon Labar, which was the third in point of time. The appropriation thus made and reported by the auditor to the court below, the court approved and confirmed, notwithstanding it was excepted to by Charles Dennison, to whom Mahlon Labar had assigned his judgment. It was excepted to, because the whole of the $157 which was considered as arising from the sale of the fee-simple, in the one-half of the equal undivided tenth part of the land, which originally belonged to Elvina, the sister of the said John W. Jenkins, after deducting therefrom a due proportion of the auditor's fees, was not appropriated towards the payment of the Labar judgment. Because the $157 was not so appropriated, Dennison has appealed from the decree of the court below.

It was considered by the auditor, and so by the court below, that the half of the equal undivided tenth part of the land in which the debtor had only acquired a life-estate was not sold by the sheriff, and indeed could not be, according to the provisions of the 6th, 7th, and 8th sections of the act of the 13th of October, 1840, entitled " An act relating to Orphans' Courts, and for other purposes," and in this we think the auditor and the court were right. But the auditor and the court took up the notion, that although John W. Jenkins had only a life-estate in the undivided tenth, which he purchased of Henry Stark, at the time Stark obtained his judgment, yet upon his purchasing the fee in the half of it afterwards, the judgment opened or expanded in regard to its lien, in such a way as to embrace and cover, eo instanti the purchase was made, the fee-simple in which the life interest was

S

merged.  As regarded the purchaser, the life-estate may be considered as merged in the fee-simple, which is the greater, but as regards the interests of lien creditors, there is no reason why it should be so ; and it would be contrary to the principle which governs and prevails in Pennsylvania in this respect.  The rule is, that the judgment only binds the lands in which the defendant has a freehold interest, either of a legal or equitable character, at the time the judgment is obtained, but does not extend to or embrace subsequent independent interests as they are acquired.  This is perfectly manifest, and will be admitted by all, I apprehend, where the subsequent interest is acquired in lands different from that in which the defendant had an interest or life-estate, as in this case, at the date of the judgment; but in principle, as regards the rights of lien creditors, it can make no material difference whether the estate or interest subsequently acquired, having no connection with the estate, held by the defendant at the time the judgment was obtained, which was perfect and complete according to its nature, be acquired in the same or different lands.  It bears no resemblance to the case of a defendant who has an interest in land at the time the judgment is obtained, under a contract with the owner thereof for the purchase of the fee-simple estate therein.  In such case it is clear and incontestably settled, that the judgment will not only bind the interest which the defendant has in the land at the time, but will operate so as to embrace by its lien any future interest or estate which the defendant shall become entitled to, or acquire in pursuance and in fulfilment of the same contract.  But it is perfectly clear in the case before us, that Jenkins did not acquire or become entitled afterwards, under the same contract, to the fee in the one-half of the undivided tenth of the land, in which he purchased the life-estate from Henry Stark.  He became the owner of it by a subsequent, separate, independent contract, made with a different person altogether.  The whole of this doctrine is laid down and fully recognised in the cases of Carkhuff *v.* Anderson, 3 Bin. 589; Ely *v.* Beaumont, 5 Serg. & Rawle, 124; Richter *v.* Selin, 440, 441.  See also Colhoun *v.* Snider, 6 Bin. 147; Lynch *v.* Dearth, 2 Penna. Rep. 101, and Love *v.* Jones, 4 Watts, 465.  We, therefore, think that the court erred in deciding that the judgment in favour of Henry Stark attached upon the fee-simple, in the half of the undivided tenth purchased afterwards by the defendant in the judgment, so as to entitle him to a receipt of the money arising therefrom upon the sheriff's sale, in preference to Dennison, the assignee of the judgment entered in favour of Mahlon Labar, after Jenkins had become the purchaser of the fee therein.  The money arising from the sale of the fee-simple estate, in the one-half of this undivided tenth part of the land,

being, when properly apportioned, $157, ought, after deducting therefrom a due proportion of the expenses of the audit, to have been apportioned between Stark's judgment and Labar's judgment, according to the respective interests or estates covered by the liens of those judgments respectively. Stark's judgment covered the life-estate merely, and being prior in time to that of Labar's, is entitled to have applied towards the payment of it, such proportion of the $157 as is equivalent to the value of the life in this half of the undivided tenth. The rule generally adopted in England, by which this question is determined, is to estimate the life-estate at one-third of the price or value of the fee-simple estate, including the life-estate. We see no objection to adopting this rule in the present case, which would give $52 33, after deducting a proper proportion of the auditor's charge therefrom, to the judgment in favour of Henry Stark, and the residue thereof to the judgment in favour of Mahlon Labar. This residue is the most that Dennison can claim upon Labar's judgment. There is no ground whatever for his claiming, as his counsel has contended, the whole $157, after deducting the auditor's charge. This would be more unreasonable, if possible, than to give the whole to Stark upon his judgment, because Stark is prior, in point of time, in having acquired a lien for the payment of his debt upon the life-estate of the debtor, and it would be strange as well as most unjust to deprive him of that right by any subsequent act of the debtor, or subsequent agreement of the debtor with a third person.

The decree of the court below must, therefore, be altered and modified so as to comport with the rule laid down above, and direction given. 157

5
___
3)152
___
$50 67
21 89
___

$72 56 to be applied to Stark's judgment, after satisfying Osterhart and Jackson's judgment. The residue of the purchase money to be applied to judgment in favour of Labar.