## Moore *versus* Hershey.

.1. The principle that the consideration of a negotiable note cannot be inquired into in the case of a holder for value, does not apply to the case of such paper made by a lunatic.

2. In a suit by the endorser of a promissory note made by a lunatic, the latter or his committee may defend, on the ground that the endorser had knowledge of the maker's lunacy, or that the note was obtained by fraud or without proper consideration.

3. Where the endorser of a promissory has been notified that he will be required to prove the consideration paid by him for the note, and he takes the stand to prove that he is a bona fide holder, it is proper on cross-examination, to ask such questions as will tend to discover whether the endorser knew that the note was originally obtained without proper consideration.

4. The defendant lunatic may also prove that he received no consideration for the note; that it was given pending proceedings in lunacy, and that plaintiff admitted that defendant had not received value for the note.

5. Per PAXSON, J.—A *lis pendens* is undoubtedly constructive notice in questions of title and property, but that it should be so as to a man's mental condition is much to be doubted.

May 7th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Lancaster county:* Of May Term 1879, No. 54.

Assumpsit by John M. Hershey against George H. Moore on a promissory note made by Moore in favor of, and endorsed by

[Moore *v.* Hershey.]

David L. Witmyer, to plaintiff. The note was dated June 8th 1872, at forty days for $500. The defendant pleaded non-assumpsit: Notice was given by defendant's counsel to plaintiff, that he would be required to prove the consideration paid by him for the note in suit.

The defence was that at the time the said note was given, Moore was a lunatic or *non compos mentis*, that proceedings had been theretofore instituted for declaring him such; that he was shortly afterwards regularly found by an inquest to be a lunatic without lucid intervals, and to have been so for about three years prior thereto, that the finding of the inquisition had been duly returned to and confirmed by the court, and Michael H. Moore and John H. Moore appointed his committee, by whom this defence was conducted: and further, that the defendant or his estate was in no way benefited by the said note, and received no value for it whatever; that the sole consideration for it was a worthless patent right, and that the plaintiff knew at the time he bought the note that Moore had received no value for it.

At the trial the plaintiff having proved the signature to the note and given it in evidence, was called as a witness in his own behalf. He testified that he gave for the note his order on Solon L. Cheny for $395, and his own note for $82.09.

He added that Witmyer told him what the note was given for. "He told me it was given to lift a judgment."

He was then asked by defendant's counsel, "Did you not know, at the time you took this note from Witmyer, that the consideration of it was a patent right?" This question was objected to by plaintiff as not being cross-examination, and was disallowed. (First assignment of error.)

He was then asked by defendant's counsel, "Did you ever tell anybody that you dealt in patent right notes; bought them for half price; you bought one of George Moore's; you knew he got no value for it, but you got it cheap and you were going to make him pay for it." Objected to by plaintiff and disallowed by the court, as not cross-examination. (Second assignment of error.)

The plaintiff having rested, the defendant gave in evidence the record of proceedings in lunacy in the case of George H. Moore in the Court of Common Pleas of Lancaster county, as follows:

Petition presented June 5th 1872. Same day E. D. North, Esq., appointed commissioner. Inquisition held June 21st and 28th 1872. Inquest find that George H. Moore is a lunatic, and has been so for about three years prior to that date, without lucid intervals. Inquisition confirmed August 19th 1872; and the same day Michael H. Moore and John H. Moore appointed committee, &c.

The defendant then offered to prove that George H. Moore, the defendant, on January 10th 1872, gave a judgment bond to Aaron H. Danner for $3000, payable April 1st 1872, and entered to

[Moore *v.* Hershey.]

November term 1871, No. 232, in the Court of Common Pleas of Lancaster county, and assigned by said Danner to David L. Witmyer, May 21st 1872, and satisfied by said Witmyer, June 12th 1872. That on February 19th 1872, an affidavit and petition were filed alleging the obtaining of said judgment by fraud, and that there was no consideration for the same, and a rule granted to open the same, which rule was pending at the time of the entry of satisfaction as aforesaid; that said judgment was given by said Moore in pursuance of an arrangement about a worthless patented wash boiler and that said Moore received no consideration for said judgment. That said Witmyer procured from said Moore six notes for $500 each, all like the one in suit, which is one of them, for said judgment; that said note was given while proceedings in lunacy against said Moore were pending; that said Witmyer subsequently to the date of said note, had the whole six notes and offered them for discount or sale; that said Hershey attended the inquest June 21st 1872, and once in a conversation with a person, said that he often dealt in patent right notes, that he bought them for half price and made money on them, that he bought one of George Moore's that he knew Moore had no value for it, but he got it cheap and would make him pay for it.

This offer being objected to by plaintiff was disallowed as a whole by the court; and the rejection thereof having been excepted to, was the subject of the third assignment of error.

The defendant submitted the following points, to which are appended the answers of the court:

1. It was not competent for the defendant to bind himself by a promissory note given by him while the proceedings in lunacy against him were pending, which resulted in finding him a lunatic for three years back and before the commencement of the proceedings in lunacy.

Ans. "Defendant having made and put in circulation, the negotiable note in suit, three days after proceedings in lunacy were commenced, which resulted in finding him a lunatic, and the payee having endorsed said note to plaintiff, who is an innocent holder for value (having no actual notice of the proceeding in lunacy, or of the lunacy of Moore, or of any taint whatever concerning said note), would be bound to pay said note, notwithstanding the fact that the inquest finds said Moore to have been a lunatic for three years prior to its date." (Second assignment.)

2. It is incumbent on the plaintiff to show that the defendant, a lunatic, so found by inquisition, received value for the note in suit, and there being no such proof, the defendant is not bound by said note.

Ans. "Refused." (Fifth assignment.)

3. Under the whole evidence in the case the verdict should be for the defendant.

[Moore v. Hershey.]

Ans. "Refused." (Fourth assignment.) .

In the general charge the court, Livingston, P. J., inter alia, said:

"We prefer to adhere to the rule as stated in Diamond v. Lawrence Co., 1 Wright 353, that the doctrine of constructive notice or notice by *lis pendens* does not apply to commercial paper not yet due, in the hands of an innocent holder for value, and therefore now say to the jury, that constructive notice, by the mere fact that proceedings in lunacy were commenced three days before the making of the note in question, which is a negotiable note, commercial paper, and which is held by plaintiff as an endorsee for value, who, as the testimony shows, has purchased it from the payee for value, without having actual notice of the proceedings in lunacy, or of the lunacy of George H. Moore (if he was then a lunatic), prior to purchasing it, is not such notice as would prevent his recovery in this action, and that plaintiff is therefore entitled to their verdict for the amount of the note with interest from its maturity."

Verdict for plaintiff. Defendant took this writ, among his assignments of error being those heretofore noticed.

*H. M. North* and *Thomas E. Franklin*, for plaintiff in error.—The plaintiff was called, in his own behalf, to prove that he was a bona fide holder of the note in question without notice. He testified to the consideration he had given for the note, and stated that Witmyer said it was given to lift a judgment. We desired to test his truth by asking him whether he did not know at the time he took the note that Moore had received no value for it, and whether he had not so acknowledged to others. Anything which tends to show the falsehood or inaccuracy of the statement of the witness may be put to him on cross-examination, although it may introduce new matter and have the effect of developing defendant's case: Markley v. Swartzlander, 8 W. & S. 172; Covanhoven v. Hart, 9 Harris 495.

Although a party purchasing a promissory note from the payee is not bound to inquire into the consideration thereof, yet if he has actual knowledge that the maker received no value for it, he cannot recover: Byles on Bills (by Sharswood), 92 to 103. But when offered in connection with the fact of the lunacy of the maker and of the pendency of proceedings instituted to inquire into it, which resulted in a finding that he was a lunatic at the time of executing the note and for a long time before, it was as we think clearly sufficient to prevent the plaintiff's recovery: Byles on Bills (by Sharswood), 47.

While the endorsee of a negotiable note is not bound to inquire into its consideration, he is bound to ascertain the status of the maker, and if the maker is a lunatic, in regard to whom proceedings had, at the time of the making of the note, been already commenced to have him declared a lunatic, the holder is required to show affirma-

[Moore *v.* Hershey.]

tively that the lunatic has given the note for a fair and valuable consideration, for the benefit of his estate: Hicks *v.* Marshall, 15 N. Y. (S. C.) 327; Surles *v.* Pipkin, 69 N. C. 513; Lancaster County Bank *v.* Moore, 28 P. F. Smith 414.

We submit further that the commencement of proceedings in lunacy is notice to all the world; and while we do not claim that the doctrine of *lis pendens* is strictly applicable to negotiable paper, we do insist that the buyer is bound to inquire who the drawer is; and that where the drawer is a lunatic, as to whom proceedings to have him so declared have been already instituted, he takes upon himself the burden and responsibility of showing that a good and sufficient consideration therefor passed to the lunatic from the payee, "so that justice and equity require it to be paid out of his estate." See discussion of principle of *lis pendens* in Winston *v.* Westfeldt, 2 Am. Law Reg. 619, Old Series.

*H. C. Brubaker*, for defendant in error.—Judgment will not be reversed because a party is not permitted to ask a question, when it is apparent from the testimony of the witness that he would not have given the answer sought: Daniel *v.* Daniel, 3 Wright 212.

Negotiable paper in the hands of a third party, who is an innocent and bona fide holder for value, cannot be assailed for fraud or lunacy: Diamond *v.* Lawrence Co., 1 Wright 353; Lancaster County Bank *v.* Moore, *supra*.

Mr. Justice Paxson delivered the opinion of the court, June 23d 1879.

The question how far a lunatic shall be held liable upon his contracts is not free from difficulty. A man may be mad without showing it. And he may show it and yet drive a thrifty bargain. A lunatic has been held liable for necessaries: La Rue *v.* Gilkyson, 4 Barr 375; Baxter *v.* Portsmouth, 2 C. & P. 178. In Beals *v.* See, 10 Barr 56, it was held that an executed contract for the purchase of goods could not be avoided by proof of insanity at the time of the purchase, unless the vendor had been guilty of fraud, or had knowledge of his mental condition. In Lancaster County National Bank against Moore, the present plaintiff in error was held upon his promissory note discounted by the bank without knowledge of his insanity. It is a just rule that when a lunatic obtains the property of another person, who in good faith deals with him in ignorance of his lunacy, he shall not keep both the property and the price. But there must be a limit to the civil responsibility of persons of unsound mind, otherwise their property would be at the mercy of unscrupulous and designing men.

The defendant below was sued upon his promissory note in favor of David L. Witmyer, and by him endorsed to the plaintiff. The latter claimed to be a holder for value, and stated when on the

[Moore v. Hershey.]

witness stand that he gave $477.09 for it.   The plaintiff was then asked certain questions upon cross-examination as to his knowledge of the consideration, which upon objection were ruled out by the court, and form the subject of the first and second specifications of error.   The objection that the questions referred to were not proper cross-examination, was not well taken.   The plaintiff had taken the stand to prove that he was a bona fide holder, upon notice by the defendant's counsel to prove the consideration paid for the note.   It certainly affected the bona fides of his holding if he knew the note had been obtained from Moore upon a worthless consideration, and in this view the questions referred to in the first and second specifications, ought to have been allowed.   The defendant, after offering in evidence the record of the inquisition of lunacy in the case of George H. Moore, the finding of which covered the time at which the note in suit was given, made the offer of evidence contained in the third specification.   The offer was substantially to prove, 1st, That Moore received no consideration for the note ; 2d, That the note was given pending the proceedings in lunacy; and 3d, That the plaintiff had admitted in conversation that Moore had not received value.   We think this offer, as a whole, ought to have been received.   The rejection of the second branch was not material, as the record of the inquisition already in evidence showed that the proceedings were commenced at a date anterior to the note.   But the remaining matters embraced in the offer were material.   They went to the consideration of the note and to the plaintiff's knowledge of it.   I know of no case in which it has been held that a lunatic, when sued upon his contract may not show want of consideration.   The most that has been decided is, that when a man deals fairly with a lunatic, and without knowledge of his lunacy, he is entitled to recover the value of what he honestly parted with. It was held, however, by the learned judge of the court below, that as this was commercial paper, and the plaintiff a holder for value, the consideration could not be inquired into.   It is doubtful if this rule, even if applicable to the facts of this case, would exclude the evidence referred to, as said evidence tends to show plaintiff's knowledge of the want of consideration.   But we are not called upon to decide this question as we place our ruling upon the broad ground that the principle of commercial law above referred to, does not apply to the case of commercial paper made by madmen.   If it did we would soon have before us this state of things : It is well known that there are a large number of lunatics under restraint in this state who are possessed of large estates.   It would be easy for a designing knave to obtain the paper of such person for a large amount.   The making of it might even be a source of delight to the unfortunate lunatic.   If such paper can be protected in the hands of a holder who has paid value, however trifling, this helpless class would have little protection.   A principle that renders

[Moore *v.* Hershey.]

such results possible must be essentially and radically wrong; we believe that none such exists. On the contrary the true rule applicable to such cases is, that while the purchaser of a promissory note is not bound to inquire into its consideration, he is affected by the status of the maker—as in the case of a married woman or a minor. In neither of these cases can he recover against the maker. In the case of a lunatic, however, he may recover, provided he had no knowledge of the lunacy, and the note was obtained without fraud and upon a proper consideration. But the lunatic or his committee may defend upon either of these grounds. This rule affords reasonable protection to the estates of lunatics, and causes no serious injury to commercial interests, as it is believed the amount of such paper that can be floated in the face of such a rule will be inconsiderable.

In the view we take of this case the fact that the lunatic has been so found by inquisition is not very important. Such finding is at most but prima facie evidence of what it asserts, and may always be rebutted by strangers to the proceeding, and I doubt the application of the doctrine of *lis pendens* to such cases. A *lis pendens* is undoubtedly constructive notice in questions of title and property, but that it should be so as to a man's mental condition is very much to be doubted. But we do not decide this point, not regarding it as essential.

There is nothing in the foregoing inconsistent with what was decided in the Bank *v.* Moore, *supra.* The questions now ruled were not raised in that case.

The defendant's second point (fifth assignment), presents the principle I have just discussed. If the facts were as assumed in said point, its conclusions of law should have been affirmed.

Judgment reversed and a *venire facias de novo* awarded.