General Casmir Pulaski Building and Loan Association, Appellant, *v.* Provident Trust Company of Philadelphia et al.

Argued January 10, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*Roland C. Heisler,* with him *Drinker, Biddle & Reath,* for appellant.

*Charles Green,* with him *Harry J. Alker, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, March 25, 1940:

In this proceeding plaintiff building association invokes equity's aid to secure a lien against a property, title to which is in Francis J. Kasprzak and Tessie Kasprzak, husband and wife, as tenants by the entireties. Francis J. Kasprzak is a weak-minded person and appears through his guardian, Provident Trust Company, also named as a defendant. After hearing, the chancellor dismissed the bill, from which action the appeal is taken by plaintiff. A decree pro confesso was entered against the wife.

The Kasprzaks desired to purchase a dwelling and applied to plaintiff building association for a loan of $7,500 to enable them to acquire the property. The loan was approved. On September 24, 1928, the deed was delivered and simultaneously the bond and mortgage to the

association for $7,500 was executed, the association having paid the $7,500 to the seller. Deed and mortgage were duly recorded. It was a purchase money mortgage: *Com. T. Ins. & T. Co. v. Ellis,* 192 Pa. 321, 43 A. 1034; *Oransky v. Stephanavich,* 304 Pa. 84, 155 A. 290. The total consideration for the property was $8,450. Apparently the $950 above the mortgage was paid by one of the Kasprzaks. They resided in the property and still occupy it. From time to time payments, amounting to $3,800, were made to plaintiff on account of the mortgage. It became in default and judgment was entered on the bond for $4,904.66. A writ of execution was issued which was met by a petition to open the judgment, filed in Kasprzak's behalf by his wife, in which it appeared that he had been declared a weak-minded person and a guardian appointed for him by one of the courts of common pleas of Philadelphia on July 15, 1923. Thereafter this bill asking for an equitable lien was filed. It was shown on the hearing of the bill that plaintiff had no knowledge of Kasprzak's weak-minded condition until the wife's petition was filed. No disclosure was made when the money was borrowed. The decree fixing weak-mindedness and appointing the original guardian was indexed in the Prothonotary's office. The chancellor found that the entry of the decree was constructive notice to plaintiff of Kasprzak's incapacity to contract, basing his findings on the provisions of section 5 of the Act of May 28, 1907, P. L. 292, 50 PS Sec. 945, which reads: "From and after a decree that the person, against whom the same is entered, is insane, or so weak in mind that he or she is unable to take care of his or her property, the said person shall be wholly incapable of making any contract or gift whatever, or any instrument in writing, and the entry of such decree shall be notice of such incapacity." We are of opinion that the entry of such a decree under the circumstances here appearing should not be held to be notice to the full extent that notice is implied from some other records. Such notice

is usually implied from the duty to examine the records. Proper title searching where conveyance is about to be made does not require the examination of the prothonotary's records for judgment against the grantee, because judgments against him would not bind after acquired real estate: *Dennison's Appeal*, 1 Pa. 201; *Packers's Appeal*, 6 Pa. 277; *Beekman's Appeal*, 38 Pa. 385; *Ross & Co.'s and Elsbree's Appeals*, 106 Pa. 82. So we think it should not be held that in real estate transactions the entry of such a decree as here exists has the effect of record liens against grantors or others back in the line of title. Notice of incapacity must be brought closer home before the circumstance of such a record deprives one dealing with a weak-minded person of any remedy to prevent the weak-minded one from holding money or property which the other has turned over to him in complete ignorance of the decree or his weak-minded condition. The situation before us, so far as notice and knowledge is concerned, to some extent assimilates itself to that in *Lancaster County National Bank v. Moore*, 78 Pa. 407. In that case, the defendant borrowed money which was used to pay his debts. The note was discounted by the plaintiff bank. The defendant thereafter was found to be insane and the inquest determined that the insanity had existed for a period extending prior to the date of the note. We decided the insanity not a defense to the obligation on the ground that the payee and the bank had no knowledge of it. In the course of the opinion, we said (p. 414) : "It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties, and retain both the property and its price. Here the bank in good faith loaned the defendant the money on his note; the contract was executed so far as the consideration is concerned, and it would be alike derogatory to sound law and good morals that he should be allowed to retain it to swell the corpus of his estate." In other cases where one innocently contracted with a lunatic or weak-minded

person, we held that the lunatic or weak-minded person will not be permitted to repudiate the contract but will be held responsible for the benefits actually received: *Moore v. Hershey,* 90 Pa. 196; *Kneedler's App.,* 92 Pa. 428; *First National Bank v. Fidelity Title & Trust Co.,* 251 Pa. 529, 97 A. 75. We presume equity would not be held helpless to declare a resulting trust where an insane person, not known to be such, received money from another to purchase land for him and instead of having the title put in the name of the real owner, placed it in his own name. In *Crawford v. Scovell,* 94 Pa. 48, an ejectment by an insane person to recover land conveyed by him, we stated there would be no difficulty in doing justice between the parties by a conditional verdict and judgment.

Under the law of unjust enrichment, the defendants should be required to reimburse plaintiff for the money lent to buy the property as far as equitably proper to do so. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other": Restatement, Restitution, Sec. 1. Defendants purchased the property almost entirely with plaintiff's money. "Incapacity to enter into a contract . . . is not in itself a defense in an action for restitution": Restatement, Restitution, Sec. 139. "The reasons which cause incapacity to make contracts . . . do not apply to actions for restitution which are based upon unjust enrichment. It is fair that married women, insane persons and infants, even if they are not required to perform their promises . . . should be required to return benefits which they have received, at least if they are still in possession of the subject matter or its proceeds": Ibid, comment a, p. 559.

That equity has power to fix a lien upon the property cannot be questioned: *People's National Bank of Pittsburg v. Loeffert,* 184 Pa. 164, 38 A. 996; *Baranofsky v. Weiss,* 120 Pa. Superior Ct. 126, 182 A. 47; Restate-

ment, Restitution, Secs. 4, 161. See also *Sundheim v. Phila. School District,* 311 Pa. 90, 166 A. 365.

We conclude that plaintiff is entitled to an equitable lien against the property. Defendant, Provident Trust Company as guardian, is entitled to have preserved to it such sums as its ward had put into the property by payment of part of the purchase money or by payments on account of the mortgage. In the event that the property has to be sold in order to work out the equities, the equitable lien of plaintiff and the beneficial interest of the guardian in behalf of its ward shall be treated as of a parity in distribution of the proceeds of sale.

The decree of the court below dismissing the bill as to Francis J. Kasprzak is reversed; the bill is reinstated for relief in accordance with this opinion. Costs to abide final determination.