Century Credit Company *v.* Jones et al.,
Appellants.

Argued June 16, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William A. Goichman,* with him *Rosenzweig, Krimsky & Goichman,* for appellant.

*Tobias Goldberg,* with him *Goldberg & Gever,* for appellee.

OPINION BY WATKINS, J., September 12, 1961:

This is an appeal by Provident Tradesmens Bank and Trust Company, guardian of Thomas E. Jones, an incompetent, the defendant-appellant, from an order of the Municipal Court of Philadelphia, discharging the petition to strike off a judgment, entered by confession against Thomas E. Jones and Althea H. Jones, his wife, in the amount of $3002.48 by Century Credit Company, the plaintiff-appellee, for certain improvements to the real estate of the defendants.

On May 9, 1960, Arrow Products Company entered into a contract with the defendants to make certain alterations, additions, repairs and improvements to their real estate located at No. 6051 Kershaw Street, Philadelphia. Title had been taken to this property in their names on March 30, 1959. Arrow Products Company assigned the judgment note to the plaintiff company and it was entered on May 12, 1960. An assessment of damages was made on November 16, 1960, in the principal sum of $2666.40 and in the total amount of $3002.48.

The appellant filed its petition to strike off the judgment on January 5, 1961 in which a number of reasons were alleged as grounds for the granting of the motion. However, we intend only to consider the question whether a judicially declared incompetent can confess judgment.

At the hearing on the petition to strike off the judgment the record of the Court of Common Pleas No. 3, which on December 21, 1920, after hearing, determined that the defendant, Thomas E. Jones, was a weak-minded person was properly introduced into evidence. *Mullen v. Slupe,* 360 Pa. 485, 489, 62 A. 2d 14 (1948); Pa. R. C. P. No. 1019(g). The record showed that the Commonwealth Title Insurance and Trust Company was appointed his guardian and was succeeded, as a result of merger proceedings, by Provident Tradesmens Bank and Trust Company. There is no record of his having regained his competency.

The Act of February 28, 1956, P. L. 1154, Art. V, Sec. 511, as amended, 50 PS §3511 (Pocket Parts), known as the Incompetents' Estates Act, provides: "An incompetent shall be incapable of making any contract or gift or any instrument in writing after he is adjudged incompetent and before he is adjudged to have regained his competency. This section shall not impair the interest in real estate acquired by a bona fide grantee of, or bona fide holder of a lien on, real estate in a county other than that in which the decree establishing the incompetency is entered, unless the decree or a duplicate original or certified copy thereof is recorded in the office of the recorder of deeds in the county in which the real estate lies before the recording or entering of the instrument or lien under which the grantee or lienholder claims. 1956, Feb. 28, P. L. (1955) 1154, Art. V, §511, as amended, 1957, July 11, P. L. 794, §1."

This was a reenactment of prior acts to the same effect. See, e.g., Act of June 28, 1951, P. L. 612, Art. V, §511, 50 PS §1861; Act of May 28, 1907, P. L. 292, 50 PS §941; Act of June 18, 1836, P. L. 589, 50 PS §691.

The law, then, seems to be clear that a judicially declared incompetent cannot confess judgment. *Pa. Co. for Bank. and Tr. v. Phila. T. Ins. Co.*, 372 Pa. 259, 93 A. 2d 687 (1953). Counsel for the appellee and the court below placed great weight on the case of *Gen. Pulaski B. & L. Assn. v. P. Tr. Co.*, 338 Pa. 198, 12 A. 2d 336 (1940), in support of their position. However, the reasoning in the *Pulaski* case was clearly distinguished by the Supreme Court in the *Pa. Co. for Bank. and Tr. v. Phila. T. Ins. Co.*, supra, at page 262, where the late Mr. Justice CHIDSEY, speaking for the Court, pointed out: "In the Pulaski case, a husband and wife executed a mortgage. After a period of years the mortgage became in default, and a writ of execution was issued. It was then disclosed for the first time that the husband-mortgagor had been declared to be a weak-minded person and a guardian appointed for him more than five years prior to the execution of the mortgage. This Court held that the mortgagee was entitled to an equitable lien on the real estate to the extent of the unpaid balance on the mortgage . . . However, upon analysis of the Pulaski case, it is apparent that the real basis of the decision is not enforcement of the mortgage, but rather restitution because of unjust enrichment."

This is further evidenced when the Court says in the *Pulaski* case, supra, page 201, ". . . Notice of incapacity must be brought closer home before the circumstance of such a record deprives one dealing with a weak-minded person of any remedy to prevent the weak-minded one from holding money or property which the other has turned over to him in complete

ignorance of the decree or his weak-minded condition."

In the *Pulaski* case great emphasis was placed on the notice to those dealing with incompetents, and the difficulty of discovery incurred by the title searcher, which is part of the complaint in the instant case, but it seems clear that the language of the Incompetents Estates Act, supra, which was enacted subsequent to the *Pulaski* case, that the legislature intended to protect incompetents by making the record of the proceedings an absolute notice of the incompetency in the county where the record of the proceedings was made and in such other counties where a duplicate original or certified copy of the proceedings is recorded in the office of the Recorder of Deeds in that county. It now seems clear that the record in the Court of Common Pleas was notice to the world of the incompetency.

It should also be pointed out that the cases we are discussing, to wit, both the *Pulaski* case, supra, and the *Pa. Co. for Bank. and Tr.* case, supra, are both cases in equity, seeking restitution, while the petition to strike off the judgment is on the law side of the court. "An application to strike off the judgment is a proceeding upon the law side of the court, and is essentially a common-law proceeding. A proceeding to strike off a judgment differs fundamentally from a proceeding to open a judgment in that, unlike the latter, it is not in the nature of an equitable proceeding. . .". 7 Standard Pennsylvania Practice, §158.

Most certainly the petition to strike off the judgment was a proper remedy for the guardian of the incompetent to use in attacking the validity of the judgment confessed by his ward. *Knox v. Flack*, 22 Pa. 337 (1853); *Stevenson v. Virtue*, 13 Pa. Superior Ct. 103 (1900). The motion to strike off a judgment entered by confession necessarily has to do with the regularity of the record and could not be based on the equities of the situation. The court below pointed out

that he could not convert the rule to strike into a rule to open. *Young v. Mathews Tr. Corp.*, 383 Pa. 464, 119 A. 2d 239 (1956). It seems to follow if the court could not convert the rule to strike into a rule to open, where it was determined that the petitioner was not entitled to the rule to strike, then, if the petitioner were entitled to the rule to strike, the court, even for equitable reasons, could not deny the motion and give him leave to later file a petition to open as a substitute remedy therefor.

What was before the court below was a confession of judgment made by an incompetent of record so that the judgment was void and the motion to strike should have been granted. The court below was in error in its statement that ". . . the estate of Thomas E. Jones will be unjustly enriched if the contract is completely annulled and the judgment is stricken." As the motion to strike is in the nature of a demurrer to the record no evidence concerning unjust enrichment was properly before the court on this petition so that it would be impossible to determine whether or not this incompetent's estate was enriched or not. The fact that it was stricken would not deprive the plaintiff company from proceeding to exercise its remedies under the theory of restitution as a result of unjust enrichment. He could sue in assumpsit or go into equity and request the court to impress a lien upon the property. Restatement of the Law, Restitution, §4 has this to say as to proceedings to secure restitution: Sec. 4(f) provides that the party is entitled to "a judgment at law or a decree in equity for the payment of money. . ." and Sec. 4(d) provides, "a decree by a court of equity that a lien upon the subject matter or its proceeds be established. . .".

It is true, too, that the rule to open a judgment is an equitable proceeding where both sides could have a full review of the question of unjust enrichment, and it is

true, too, that the order by the court below giving leave to the guardian to file such a motion within twenty days would be a way of determining the equities of the situation if, in fact, under the record the guardian was not entitled to his chosen remedy of striking off the judgment.

The shelter that the law provides for incompetents has been somewhat weakened by permitting restitution under the theory of unjust enrichment. This is based on clear principles of justice and equity. However, the theory should not be extended to deny him his choice of remedy and most certainly the burden of moving and of proof should not be placed on the incompetent, but rather on the one who having notice, under the law, of the incompetency, chose to contract with him and now seeks restitution. This seems to follow from the fact that incapacity, of itself, is not a defense to an action seeking restitution.

The order is reversed and the rule to strike off the judgment is made absolute as to the incompetent Thomas E. Jones.