# Suydam *et al. versus* The North Western Insurance Company *et al.*

1. Judgment-creditors of an insolvent corporation, by their bill in equity sought to have funds belonging to the corporation, which were in the hands of natural persons who were made co-defendants with the corporation, applied to the payment of their judgments; there was no averment in the bill, that executions had been issued on the judgments and had proved fruitless.   *Held*, that the bill was fatally defective.

2. Such averment is necessary to show that the complainant is remediless at law.

3. The Act of June 16th 1836, relating to executions, makes provision for obtaining satisfaction of judgments against corporations which, by virtue of the Act of March 21st 1806, is exclusive of all others, and relief cannot be had in this state by means of a bill in equity.

4. The sequestrator appointed under the Act of 1836 may, by using the name of the corporation, avoid a fraudulent grant, and is armed with all the orders and decrees that a court of chancery can enforce.

[Suydam v. North Western Ins. Co.]

APPEAL from the decree of the court of Common Pleas of *Erie county*, in which Suydam and others, creditors of the North-Western Insurance Company, were complainants, and said company, its directors and others, were defendants.

The bill charges that the company were empowered to open books for subscription to a capital stock, to consist of not more than six thousand shares of $50 each share; that the directors and managers ordered books to be opened for such subscription, and that said books were opened and stock subscribed by each of the defendants; that upon some subscriptions some money was paid, and a stock-note given for the balance, and in other cases a note was given for the whole amount subscribed. Then follows a statement of the amount alleged to have been subscribed by each defendant:

" That the directors and others of the defendants, with a view to defeat the collection of the said notes, agreements or promises, agreed to and did cancel said note or notes, agreements and promises, by abstracting the same from the custody or possession of the company, by erasing their names therefrom, or by refusing to enforce the collection thereof, whereby the payment of the debts then due by the said company, or the debts or losses that might thereafter become due, were defeated:

" That the defendants, after the North-Western Insurance Company had contracted liabilities and was insolvent—they being stockholders and directors, managers and officers of the said company—declared and paid to themselves and other stockholders of the said company large dividends upon said stock, thereby disposing of the assets or funds of the company that should have been applied so far toward the payment of the indebtedness of the company:

" That the defendants, being stockholders, directors, managers and officers as aforesaid, divided among themselves and otherwise released, cancelled, destroyed and misappropriated the debts due to and the assets of and belonging to the said company, whereby the complainants were defeated in the collection of their just debts from the said company."

Then follows a statement of the judgments obtained by the plaintiffs in this bill against the insurance company to the amount of about $30,000, but nowhere in the bill is it alleged that plaintiffs had issued executions on their judgments and had returns of *nulla bona*.

Then follow a series of fifteen interrogatories, inquiring of each defendant if he did not subscribe the amount alleged, whether any payment was made, and if so, how much, how much he still owed, what were the assets of the company, and how much, and praying the court to decree and order that defendants pay to the com-

plainants the amount of their respective demands against the said company, and a prayer for general relief.

The defendants demurred, for the following among other reasons :—

1. This, being a bill for discovery of personal assets for the payment of plaintiff's alleged judgments, has not been preceded by *fieri facias* and returns of *nulla bona* thereon.

2. The defendant, in the plaintiff's alleged judgments, and the principal defendant in this bill of complaint (the North-Western Insurance Company), being an insolvent corporation, the complainants, plaintiffs in the before-mentioned alleged judgments, cannot sustain this bill as complainants.

The court (Derrickson, J.) sustained the demurrer and dismissed the bill; plaintiffs appealed and assigned the same for error.

*John H. Walker*, for appellant, contended that complainants' bill showed that it was not filed to enable them to discover property, either real or personal, in aid of an execution at law. The bill was for an essentially different purpose. It was to hold the defendants directly and immediately responsible to the plaintiffs for *malam fidem* as stockholders, officers and managers of the North-Western Insurance Company.

It was to hold the directors responsible for official misconduct, in cancelling and giving up to each person who had subscribed for stock, the note, bond or writing given therefor, and to compel, by decree, each person who had subscribed for stock to pay to the complainants the unpaid balance upon their stock.

It was brought to hold the defendants directly and personally responsible to the complainants for bad faith in cancelling stock-notes, and in refusing to collect balances due upon stock, which law and equity makes a trust-fund for the payment of the debts of the corporation.

He referred to the various acts conferring chancery jurisdiction on the courts, 1836, 1840, 1845 and 1847; Wood *et al. v.* Dummer *et al.*, 3 Mason 308; Marsch *v.* the Savings Fund, Leg. Int. May 2d 1862; Bank of Kentucky *v.* Schuylkill Bank, 2 Pars. 180; Bank of Virginia *v.* Adams, Id. 534.

*Benjamin Grant*, for appellees, to sustain the first cause of demurrer referred to Balch *v.* Westall, 3 P. Wms. 445; King *v.* Marrissal, 3 Atk. 192; Shirley *v.* Watts, Id. 200; 1 Vern. 399; Hendricks *v.* Robinson, 2 Johns. C. R. 296; Brinkerhoff *v.* Brown, 4 Id. 671; McDermott *v.* Strong, Id. 687.

In Welford's Eq. Pl. 260, it is said : "It has been held that a court of equity will not assist a judgment-creditor to obtain payment of his debt, unless he has sued out execution; and if he does

[Suydam v. North Western Ins. Co.]

not state in his bill that he has done so the defendant may demur;"
and refers to Neate v. Duke of Marlborough, 9 Sim. 60, 3 Myl. &
C. 407. The following cases hold the same doctrine: Tappan v.
Evans, 11 N. H. 411; Gordon v. Lowell, 21 Maine 251; Stoors
v. Kelsey, 2 Paige 418; Speiglemyer v. Crawford, 6 Id. 254;
Cuyler v. Moreland, Id. 273; Clark v. Webb, 2 Hen. & M. 8;
Morgan v. Crabb, 3 Porter 470; Wright v. Petrie, 1 S. & M. Ch.
282; Scott v. Wallace, 4 J. J. Marsh. 654; David v. Banks, 6
Id. 219; Beck v. Burdett, 1 Paige 305.

In Siter v. Waldron, 1 T. & H. Prac. 77–8, it is said: "It
seems it is not the practice to compel a discovery of the defend-
ant's *personal property* in aid of an execution at law until a *fi. fa.*
has been issued and returned *nulla bona*, though discovery will
be compelled of real estate without such previous execution."

In Purd. Dig. ed. 1861, p. 406–7, the specific legislation of
this state upon this special subject, and the forms of which must
be followed under the Act of 21st March 1806 are given. A
remedy is clearly prescribed and must be followed. Appellant's
bill does not follow this act, and for this reason cannot be
sustained.

In support of the second cause of demurrer, it would seem to
be sufficient to refer to Act of June 16th 1836, §§ 73, 74 and
75, and to § 1 of Act of 14th April 1828, Purd. Dig. p. 200,
and Bevans v. The Turnpike, 10 Barr 175.

A bill for the discovery of assets in Pennsylvania is in the
nature of an execution attachment, and should be docketed in
the original suit, to which the defendant should plead and go to
trial: Purd. Dig. 407, § 48 n. *a*; Shaffer v. Watkins, 7 W.
& S. 219.

In Marion Beneficial Society v. Drake, 7 Casey 82, C. J. Lewis
says: "The members are not directly responsible to the creditors
of the corporation, but when they authorize it to contract debts
for their benefit, they are each bound in conscience to contribute
to the corporation itself a just proportion of the funds necessary
to meet the engagements thus made."

The opinion of the court was delivered, February 9th 1866, by
STRONG, J.—The complainants are all judgment-creditors of
the North Western Insurance Company, and the object of their bill
is to obtain satisfaction of the judgments they have recovered.
The specific relief sought is the compulsory application to the
judgments of funds which, though in the hands of the natural
persons named as co-defendants with the corporation, the com-
plainants allege are in equity trust funds, primarily applicable
to the payment of the company's debts. The discovery for
which the bill prays is but ancillary to this relief, and it is

[Suydam *v.* North Western Ins. Co.]

of no importance if the prayer for relief must be denied. The right to the decree asked for is based upon the alleged insolvency of the corporation, but there is no averment that executions have been issued upon the judgments of the plaintiffs, and that they have proved fruitless. This is a substantial defect. Apart from the directions of the Acts of Assembly, to which we shall presently refer, such an averment is indispensable to the maintenance of a bill like the present. It is necessary to show that the complainants are remediless at law. It is quite possible that a judgment-debtor be insolvent, and yet an execution against him may result in enforcing the payment of the single debt in judgment. The ordinary meaning of the term insolvency is the state of a person who has not property sufficient for the full payment of his debts. Under the English bankrupt laws, a trader is in insolvent circumstances who is not in a condition to pay his debts in the usual and ordinary course of trade and business: Shore *v.* Lucas, 3 Dowl. & Ry. 218; and such is the common understanding of the term "insolvent": Biddecomb *v.* Bond, 4 Ad. & E. 332. A general averment of insolvency may therefore be made truthfully against a corporation defendant, while a judgment-creditor complainant has a speedy and adequate remedy at law for the collection of the debt. Hence it has become an established rule that when a judgment-creditor seeks the aid of a court of equity to enforce the payment of his judgment, he must aver that a *fi. fa.* has been issued, and that it has been returned unproductive. And the rule is not confined in its operation to bills of discovery, as is apparent from its reason. That it is a settled rule all the authorities agree. One of the earlier is Angle *v.* Draper, 1 Vern. Case 371. There the defendant, who had the goods in his hands that the complainant sought to have applied to the payment of his judgment against the other defendant, seemed to have obtained them in a fraudulent manner, under a pretence of a debt due to himself. Yet his demurrer was allowed, because the bill did not allege that an execution had been taken out. In Hendricks *v.* Robinson, 2 Johns. Ch. 283, the chancellor, while asserting that the court would lend its aid to enforce a judgment at law, by compelling discovery and *account*, either as against the debtor, or as against any third person who may have possessed himself of the debtor's property, and placed it beyond the reach of the execution at law, declared that the preliminary step required is, that the judgment-creditor should have made an experiment at law by actually suing out an execution. It need hardly be said that if this is an indispensable preliminary to equitable interference, it must be averred in the bill. Brinkerhoff *v.* Brown, 4 Johns. Ch. 671, asserts the same doctrine. In this case most of the English decisions were reviewed, and it was said the latter ones are peculiarly forcible, since they require a previous execution at law,

even in cases in which the creditor is pursuing a mere right in equity, not tangible at law, or vendible under a *fi. fa.* In McElwain *v.* Willis, Yardly *et al.*, 9 Wend. 548, it was decided that to entitle a judgment-creditor at law to the aid of a court of chancery, to obtain satisfaction of his judgment against the defendant, out of property not liable to be levied upon by execution, he must show not only an execution issued, but returned " *nulla bona,*" and that no state of facts will excuse such return. Reference may also be made to Beck *v.* Burdell, 1 Paige 308. These cases, and a multitude of others that are at hand and that might be cited, establish the rule that a court of equity will not entertain a bill to enable a judgment-creditor to obtain payment of the debt, unless the bill show by a return of *nulla bona* to an execution issued on the judgment, that all remedy at law has been exhausted. And if such is the rule, the bill of the present complainants is fatally defective.

Moreover, even had writs of *fi. fa.* been issued upon the judgments of the complainants, and returned unsatisfied, and had the bill so charged, there is another obstacle in their way which is insuperable. It is the want of power in the Court of Common Pleas to adjudicate upon any such bill filed at the suit of a judgment-creditor. Whatever might be done in other states or in England, where untrammelled equity powers are vested in the courts, and where there are no interferences of legislation, with us there is a restriction imposed by the Acts of Assembly of March 21st 1806, and June 16th 1836. The latter is the general act relative to executions.

It is the act that, adopting the Act of 1819, made stock owned by any defendant in any body corporate liable to execution, and also authorized a levy upon debts due to a judgment-debtor, and deposits belonging to him, neither of which could be taken in execution before the passage of the act. It also enacted that it should be lawful for the plaintiffs in any judgment for the recovery of money obtained in any court of this Commonwealth, to have a bill for the discovery of the real and personal estate of the defendant in such judgment. These were some of the provisions made relative to executions generally, those against natural persons. But the same act provided a peculiar system for execution or means of obtaining satisfaction of judgments against corporations, other than municipal. The system was manifestly intended to be complete, and it is quite as efficient as any bill in equity can be. The seventy-third section enacts that in every case in which judgment shall have been obtained against such a corporation, and an execution thereon shall have been returned unsatisfied in whole or in part, the court may, upon bill or petition of the plaintiff in such judgment, award a writ to sequester the goods, chattels and credits, rents, issues and profits,

&c., of the corporation. The seventy-fourth section directs the court, upon awarding the writ, to appoint a sequestrator to execute it, and to take charge of the property and funds received or taken by virtue of it, and to distribute the net proceeds among all the creditors of the corporation, according to the rules established in the case of insolvency of individuals. The section also declares that the sequestrator appointed shall have all the powers and be subject to all the duties of trustees appointed under the laws relating to insolvent debtors, with a proviso that has no bearing upon the present subject. The seventy-fifth section confers upon the court the power, at the time of awarding the writ or afterwards, to make such orders and decrees as may be necessary to carry the same into full effect, and also to make all such other orders and decrees in the premises, for the purpose of giving full and effectual relief to all the creditors of such corporation as shall be agreeable to equity, and to enforce them against all persons as fully as a court of chancery might do. This process of sequestration was intended as a substitute for the writ of attachment which the act authorized to enforce judgments against natural persons. And the rights and credits of a corporation—those rights that lie in action, debts due to it or deposits belonging to it—could be reached in no other way. It was early decided that the Act of 1836 did not authorize an attachment-execution against a corporation to attach debts due to it: Monongahela Navigation Company *v.* Ledlie, 3 Penn. Law Jour. 179 ; Ridge Turnpike Company *v.* Peddle, 4 Barr 490. The supplemental Act of March 20th 1845, Pamph. L. 189, it is true, gave this additional remedy. It authorized attachment-executions against corporations, but in every other particular it left untouched the system provided for obtaining satisfaction of judgments against them by the Act of 1839. That system is an adequate and efficient one. It reaches all the intangible property of the indebted corporation. It reaches even that which may have been fraudulently conveyed away, for the sequestrator has the powers of a trustee under the laws relating to insolvent debtors. He may not be able to sue in his own name, but even using the name of the corporation, he may avoid a fraudulent grant. If he cannot, then he has not the powers of a trustee under the insolvent laws. The right of such a trustee does not flow from his legal ownership. A grantee of an insolvent is barred by his grantor's prior grant. It is the fact that a statutory trustee is the agent of the law that enables him to set aside the debtor's frauds. It has even been said a sequestrator may resort to a bill of discovery : Bevans *v.* Dingaman's Choice Turnpike, 10 Barr 179. At all events, he is armed with all orders and decrees that a court of chancery can make and enforce. The complainants in this bill seek to reach a fund which they allege is improperly in

[Suydam v. North Western Ins. Co.]

the hands of the co-defendants of the corporation. They assert that it is a trust fund, chargeable primarily with the duty of paying the debts of the corporation, and that they, as judgment-creditors, have a claim upon it. If this be conceded, statutory sequestration will reach the fund quite as effectually as any decree of ours on this bill could do, if we were at liberty to decree in favour of the complainants. True, after having collected the money, it would be the duty of the sequestrator to distribute it rateably among all the creditors of the corporation, instead of applying it exclusively to the satisfaction of the plaintiff's judgments in the first instance. But if the fund is a trust fund for the payment of all the debts of the corporation, it is not easy to see how the complainants have any equitable rights to it superior to those of the creditors generally, and certainly they have no greater legal right. Neither by judgment, nor by execution, have they any lien upon the fund. We need not, however, pursue this line of thought further. It is enough that, without the Act of 1836, the complainants have no resort to any rights in action of the defendant corporation. What rights they have they must take as given to them by that act, both in extent and mode of enforcement. By its provisions they can reach such property only by sequestration, or by attachment-execution, under the supplementary Act of 1846.

These acts having thus provided a remedy and devised a system by which the rights and credits of a corporation, the debts due it, deposits belonging to it, all that is applicable to the payment of its debts, may be reached at the suit of a judgment-creditor; the mode pointed out is, by force of the Act of 1806, exclusive of all others. To it the complainants are confined. And where it is not so, they can have no standing in equity, for they have a complete remedy at law.

Such was in substance the doctrine asserted in Bevans v. The Turnpike Company, 10 Barr 175. That was a bill for discovery alone, but the principles laid down are applicable to this case. The Bank of Kentucky v. The Schuylkill Bank and Levis, 1 Pars. 180, has very little resemblance to the case now under consideration. It was not a bill to enforce the payment of a judgment, but a bill to call to an account a fraudulent agent. And the cases cited from the District Court of Philadelphia are equally irrelevant. The complainants rely mainly upon Wood v. Dummor, 3 Mason 308. One reason why that is not an authority in point has been stated. Other reasons might be given, but the one mentioned is quite sufficient. It is enough that we have a statutory system of our own for enforcing the payment of judgments against corporations. The decree of the court below was right.

1 P. F. SMITH—26

[Suydam *v.* North Western Ins. Co.]

And now, to wit, February 9th 1866, this cause having come up by appeal from the decree of the Court of Common Pleas of Erie county, and having been argued by counsel at Pittsburgh, after consideration, it is ordered, adjudged and decreed, that the decree of the Court of Common Pleas, sustaining the demurrer of the defendants, and dismissing the complainant's bill, be affirmed; and it is further ordered that the appellants pay the costs of this appeal.