# Barto's Appeal.

1. In a suit to charge a wife's land with a debt contracted by her husband for improvements, it is a sufficient defence that the improvements were made against her consent.

2. In Pennsylvania mechanics would have a lien on the wife's land if the contract was made with or recognised by her, and the improvements were necessary or convenient for the property. Per Pearson, P. J.

3. If the wife encourage her insolvent husband to improve her property to the injury of his creditors it is in the power of a court of equity either to decree a sale and appropriate the proceeds between the creditor and the wife or to lease it and apportion the rent until the debt be paid. Id.

4. If a married woman be guilty of collusion with her husband her rights of property will not be protected by a court of equity.

May 21st 1867. Before Woodward, C. J., Thompson and Agnew, JJ. Strong and Read, JJ., absent.

Appeal from the decree of the Court of Common Pleas of *Lebanon county.* In Equity.

Tobias Barto, the appellant, filed his bill in the Court of Common Pleas, on the 11th of October 1861, against John M. Mark and Catharine Mark his wife. The bill averred that he was a judgment-creditor of John M. Mark for $616.40, his judgment having been recovered on a promissory note, dated March 13th

1860, given in settlement of a book account due from Mark; that Catharine Mark the wife, in 1853, became and still is the owner in fee of a lot of ground in the borough of Lebanon; that she paid $1915 only for the house out of her own funds, and that when she bought the lot John M. Mark was and has continued to be insolvent; that about the year 1855 or 1856 Mark commenced making improvements on his wife's lot, costing from $3000 to $4000, which he paid out of his own funds; that Catharine concurred in making the improvements, knowing that her husband was insolvent, and that the funds of Mark were intentionally so applied, with the concurrence of the wife, to prevent his creditors from reaching them, and alleging, under the circumstances, that his judgment became a lien on the real estate mentioned, and prayed that Mark be compelled to pay, or the real estate be sold under execution to pay his debt.

By their answer the defendants admitted that the husband made and paid for the improvements from money realized in part from his business as hotel keeper, and from other sources, but denied that the improvements were so made to prevent Mark's creditors from reaching them, or that the wife concurred in making the improvements, but averred that they were made against her wishes and remonstrances; that the debt of complainant was not contracted on account of the improvements, and that all the husband's interest in the premises had been sold by the sheriff under another judgment.

The court below dismissed the bill, Pearson, P. J., delivering the opinion, viz.:—

"The debt was not incurred in making the improvements; they were mainly completed before it was contracted. The interest of Mark, if any he had, has been sold by the sheriff and deed executed, and the remedy of the creditor is not in equity, but he should proceed at law in the ordinary way. We are of the opinion that the sheriff's sale passed no title to the property; the husband's interest could not thus be sold, but if the creditor has any remedy it is in equity, which may order a sale of the whole estate, and apportion the money between the creditors of the husband and the wife, in proportion to their respective interests therein. The main question is, will equity disturb the wife in her possession under the circumstances? Will it decree a sale of the estate in order to reach the money invested by the husband therein to pay this creditor?

"That the husband cannot encumber his wife's property *directly*, without her written consent duly acknowledged, is expressly provided in the statute. Can he do it *indirectly* by improvements without her consent and against her will? This is a question of great moment under the Married Woman's Act, for before its enactment, if he improved the property, it would be

presumed to have been done for his own benefit, on account of his life estate therein, and his interest could be sold or sequestered. It cannot now be disturbed at law, and the creditor will be enjoined in equity from making a sale: Hunter's Appeal, 4 Wright 194. And where his rights are sold the wife cannot be disturbed in her possession: McElfatrick *v.* Hicks, 9 Harris 402; Keeney *v.* Good, Id. 349. On the one hand we must guard against the frauds which may be perpetrated by permitting men to invest their money in improving the estates of their wives, which they themselves will afterwards enjoy, to the injury of their creditors; and on the other, against married women being deprived of their homes by the improper acts and intermeddling of their husbands, in expending money on the wife's property. I am very clear that if the creditors have any remedy it is the one pursued in the present case, as a court of equity can properly apportion the rights of the respective parties, and dispose of the estate, its rents or proceeds.

"We have no decisions in Pennsylvania, under the Married Woman's Act, which meet the present case. Lichty *v.* Hager, 1 Harris 565, relied on by the defendant's counsel, says: 'We are not prepared to determine that where necessary repairs are made by the owner, to a house to make the dwelling comfortable, that a subsequent judgment-creditor shall have a lien for the price of these repairs, or where the repairs are made by a husband to his wife's property.' The case does in effect decide that the repairs were not a lien on the interest of the wife, as the creditor was allowed no claim beyond the resulting trust arising from the husband paying a portion of the purchase-money.

"The decisions of the courts in other states under their statutes, designed to protect the rights of married women, and almost in the same words with our own law, may with safety be resorted to for an exposition of the principles which should rule this case. Kentucky was, we believe, the first state to adopt the system. Its enactment is some two or three years prior to our own, and many of the provisions of their statute are precisely in the same words. One of the first cases which came before the courts of that state was of a character which generally commends itself as presenting a strong equity for payment. It was that of a mechanics' lien filed against the property of a wife for improvements made on her estate under a contract with her husband, and it was held that the mechanic had no claim or lien, as the husband could not encumber his wife's property. The court could not order the estate to be sold or rented from the wife to pay such debts: 12 B. Monroe 90; Fetter *v.* Wilson, and in Pill *v.* Cole, 2 J. J. Marshall 152. It was held that such a lien was void, the repairs or new erections not being *necessaries*, and the husband could not bind the wife's estate, nor could she herself, by giving

her note to the mechanics after the work was done, except for *necessaries contracted by her.* This case fully recognises and relies upon Fetter *v.* Wilson, already cited. I am well satisfied that in Pennsylvania mechanics would have a lien on the wife's estate for work done if the contract was made with or recognised by her, and the improvements were necessary, or even convenient for the property. A case in that state, more strictly analogous to the present, is that of Robinson *v.* Hoffman and wife, 15 B. Monroe 80. The mother of a married woman conveyed to her daughter a house and lot in a town, by deed dated subsequent to the Act of 1846, to secure the property of married women, and also gave her lumber in part to repair it; and the husband had the repairs made to the value of $400 or $500, which repairs were necessary to render the house habitable and comfortable, and were paid for by the husband out of his earnings as a physician, his practice being small. Held that the premises could not be taken for the husband's debt. The court of equity would not turn the wife out of possession, nor put the creditor in as a tenant in common with her, nor would it order a sale, as that would deprive the wife of her home, therefore the creditors had no remedy. This case also fully recognises that in 12 B. Monroe 90. A similar law to ours exists in the state of Vermont, and a case there arose under these circumstances: The father of a married woman gave to his daughter a lot of wild land worth some $200 or $300. The husband, with his own labor and that of his sons, made improvements upon the land, which rendered it worth some $1500 or $1600, the husband being insolvent at the time. Held that it could not be taken for his debts, as he could not make an agreement with his wife to improve without the intervention of a trustee, and none was made either in that way or otherwise. He was but a *volunteer* improving his wife's property; the wife could not prevent him from rendering this voluntary service for her benefit; she could not be deprived of her home thereby, and it gave to him or his creditors no equitable claim: Webster *v.* Hildreth and Wife, 33 Verm. 457.

"If these two decisions in Kentucky and Vermont are sound, they go very far towards settling the case before us. In the state of New York we find a decision made by one of their several Supreme Courts under the Married Woman's Act, which might, at first view, appear to conflict with that of Kentucky in relation to mechanics' liens on a wife's property. It was held that where mechanics had made a contract with *husband and wife* to improve the separate estate of the latter, by which work it was greatly benefited, the property was liable for the debt of the wife, as contracted by her, and for her benefit. It was conceded that she had a strictly *legal estate* in the land, as distinguished from an equitable estate held by a trustee for her before the passage of

the Act of Assembly; and as it was settled that she could contract for the improvement of such estate, which would be good in equity, she must be able to make necessary and proper improvements on her legal estate, and her contract therefore be enforced against her property by a decree: Colvin *v.* Cuviers, 22 Barb. 372, decided in 1856.

"There is a case in Kentucky which did not arise under the Married Woman's Act, but on general principles of equity, where it was held that where an insolvent father had put valuable and permanent improvements on the real estate of his son, whereby its value and annual rent were greatly increased, a court of equity would direct the property to be rented out during the minority of the son, and the increased rent from the improvements, applied to the debts of the father. This, the court says, is partly on the ground that the son had no guardian, and the father was guardian by nature, and therefore the improvements were not made by a trespasser, but by one who had a right to manage the estate. They declined making any decree for renting any longer than during the minority, leaving the question open after that time, for a future order: Athey *v.* Knott, 6 B. Monroe 24. That case, I am inclined to think, was, in part, influenced by the 'occupying claimant's law' of that state, which gives to those who improve land in good faith, not as mere trespassers, pay for their improvements. It is settled by our own Supreme Court, in Murray *v.* Keyes and Wife, 11 Casey 384, that before the property of a wife can be levied on for a debt, it must be made to appear not only that they were *necessaries* which were purchased, but that the debt was *contracted by herself;* and if done for the improvement of her property, we apprehend it must be proved that she made the contract under which it was done, or that the same was made for her by a person authorized so to do. Such is the language of the 6th section of the act. In cases of that kind the party desiring to recover the debt, must proceed at law under the statute. This is a different proceeding and on other principles, being founded on a general equity in creditors to follow the property and earnings of their debtors, however invested. This a court of chancery will aid them in doing, provided thereby no injustice is done to others. In the present case, had the wife encouraged her insolvent husband to improve her property, by investing his means therein, to the injury of his creditors, we are of the opinion that it would have been in the power of the court either to have decreed a sale of the estate, and apportioned the proceeds between the creditor of the husband seeking its aid, and the wife, according to their respective interests; or to have leased it out, and apportioned the rent until the debt was paid. But from the answers and evidence the wife used every reasonable effort to prevent the improvements being made, remonstrated with

her husband against it even in the presence of one of the workmen, and the work was done without her consent, and against her will. To permit her to be stripped of her home, and deprived of a shelter for herself and family, under such circumstances, would be contrary to equity, and subversive of that protection intended to be thrown round her property, by the act to protect the rights of married women. It would not be any less danger-·ous in its effects to encumber it with a judgment or mortgage.

" We must bear in mind that she has a strictly legal title (see Cord on the Rights of Married Women, § 275), separate from that of the husband, and an equal equity with the creditors whose debts existed at the time the improvements were made, and where the equities are equal, the law must prevail, and the legal title hold good. But is the orator in the present bill such a creditor as can complain of the fraud? He cannot say that any of *his* money went into these improvements; they were almost entirely made before any part of his debt was contracted, for although a few items of his bill bear date prior to the completion of the last work, yet there is no evidence from which we can ascertain the extent of that work, whether it cost $100 or $500. This creditor had full notice *in law*, by the recorded deed, at the time he sold the articles, that the property belonged to the wife; and although conveyances made when the party is indebted are void by the statutes of Elizabeth, against subsequent as well as existing creditors, yet a case of this kind does not come within the statute; there was no conveyance, no transfer of any kind, and equity will rarely give relief in favor of a subsequent creditor, except where the debt is contracted when the party is about to embark in a new or dangerous business: see Roberts on the Statute of Frauds 424-5; Eq. Abd. 149; 2 Vernon 490; Roberts 452-4; Cord on the Rights of Married Women, §§ 59, 60-4, and cases there cited.

" We do not, however, predicate our decree in this case so much of the want of equity in the orator, on account of his debt having been subsequently contracted, as of the legal rights of the wife to ·hold her property unencumbered by the unauthorized acts of the husband. She may, like a *feme sole*, or even an infant, be guilty of collusion with the husband, to the injury of his creditors, in which case her rights of property will not be protected by a court of equity, but where nothing of the kind appears, her estate cannot be destroyed, and her homestead wrenched from her, by any act of her husband, committed against her will. If it can, there is no protection for the rights of married women, and our statute on the subject is a dead letter, and might as well be repealed.

" We are of the opinion that the whole case presents no such

equity as will entitle the orator to relief at the hands of the court. The bill must therefore be dismissed at his cost."

The complainant appealed, and assigned the dismissal of his bill for error.

*J. Funck*, for appellant.—The making of these improvements gives the husband no greater estate in the wife's property than he previously had by law: Ingham *v.* Creary, 1 Pa. R. 389; Keeney *v.* Good, 9 Harris 349; Hunter's Appeal, 4 Wright 194. If the creditors have any remedy, it is the one pursued in the present case. The husband cannot make a post-nuptial settlement in fraud of creditors: Simpson *v.* Breckenridge, 8 Casey 291; Black *v.* Nease, 1 Wright 440. If the husband, with her sanction, made these improvements, the mechanics and material-men would have had a lien: Forrester *v.* Preston, Leg. Jour. Sept. 23d 1861. The court will give a construction of the Act of 1848 subservient to the ends of justice, and protecting alike the interests of married women and the rights of creditors: Pettit *v.* Fritz's Ex'r., 9 Casey 118; Walker *v.* Reamy, 12 Id. 410; Athey *v.* Knotts, 6 B. Monroe 24; Fetter *v.* Wilson, 12 Id. 90; Pell *v.* Cole, 2 J. J. Marshall 152; Robinson *v.* Hoffman, 15 B. Monroe 89; Webster *v.* Hildreth, 33 Vt. 457; Johnson *v.* Harvey, 2 Penna. R. 92; Thompson *v.* Dougherty, 12 S. & R. 455; Elliott's Appeal, 14 Wright 80; Black *v.* Nease, 1 Id. 438; Ridgeway *v.* Underwood, 4 W. C. C. R. 129; Story's Eq. Jur. §§ 360, 361; Hopson *v.* Payne, 7 Mich. 334; Mackinson's Appeal, 6 Wright 330; Robinett's Appeal, 12 Casey 187; 1 Am. Lead. Cas. 56–7, note 72; Sexton *v.* Wheaton, 4 Wheat. 503.

*A. R. Boughter*, for appellee, was stopped by the court. He cited in his paper-book 1 Greenl. Ev. § 260; Horton's Appeal, 1 Harris 71; Brightly's Eq. § 720; Pusey *v.* Wright, 7 Casey 387; Eberly *v.* Groff, 9 Harris 251; Heugh *v.* Jones, 8 Casey 432; Fetter *v.* Wilson, 12 B. Monroe; Pell *v.* Cole, 2 J. J. Marshall 152; Robinson *v.* Hoffman, 15 B. Monroe 80; Webster *v.* Hildreth, 33 Vt. 457.

The opinion of the court was delivered, July 3d 1867, by

WOODWARD, C. J.—This was a bill in equity to charge a married woman's estate with a debt of her insolvent husband, on the ground that he had expended a larger sum of his means in improving her real estate, though against her will and consent. If it were the very debt incurred in making the improvements, the fact that they were made against her consent would be a sufficient defence; for if a married woman's real estate is to be charged for improvements, they must be such as she authorizes and consents to—not such as an insolvent husband or any other volunteer

may make against her consent. True, her objections may be feigned and insincere, but there was no proof that they were so in this instance; and, assuming that they were made in good faith, it is hard to see what more she could have done to protect her estate from an unwilling encumbrance.

But the debt sought to be charged against her was not incurred in making the improvements, but was for a liquor bill, which the plaintiff thinks she ought to pay because the husband's means went into the improvements. That he has no equity to charge her with this bill is so satisfactorily shown in the opinion of the learned judge below, that we affirm the decree dismissing the bill.