## People's National Bank of Pittsburg and E. J. Larkins v. George Loeffert, John Loeffert and Albert L. Loeffert, Appellants.

*Equity—Equity jurisdiction—Fraud—Lien in equity.*

Where a debtor, conspiring with another to defraud his creditors, furnishes materials to make improvements on the other's land, a court of equity will award a lien on the land in favor of the creditors to the extent of the cost of the improvements.

Where a debtor has used his personal property to place improvements upon the lands of another, in combination with the latter to defraud creditors, the better practice would be to enter a decree ascertaining the amount of the debtor's property which had become merged in the real estate, and awarding a lien for such amount, but a decree making a judgment against the debtor a lien upon the land, while irregular, will not be set aside where the land has been sold under the decree, and the interests of purchasers have intervened.

*Equity—Jurisdiction—Objection to jurisdiction—Practice, C. P.*

Whatever force objections to the jurisdiction of a court of equity might have had, if made at the proper time and in the proper manner, the Supreme Court will not entertain them if they are made for the first time in the argument in that court, unless it is a case in which no circumstances whatever can give the court jurisdiction.

Where a court of equity has general jurisdiction of the subject-matter, and has assumed jurisdiction, the defendants cannot object for the first time in the Supreme Court that the plaintiffs did not allege that they had exhausted their legal rights against the defendants.

Argued Nov. 1, 1897. Appeal, No. 127, Oct. T., 1897, by defendants, from decree of C. P. No. 1, Allegheny County,

March Term, 1897, No. 499, on bill in equity.    Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ.    Affirmed.

Bill in equity for decree that plaintiffs' judgments be declared
liens upon land the title of which is not in the name of the de-
fendant in the judgment, but the improvements on which were
made with his funds.

At the trial the court refused defendants' motion that the
bill be dismissed, upon the ground that there is a complete and
adequate remedy at law. [1]

The court, STOWE, P. J., filed the following opinion:

John and George Loeffert were partners in a planing mill
business for six or seven years prior to August, 1896, the time
of their failure.    For a considerable time prior to that date,
they were absolutely and irretrievably insolvent, and managed
to carry on their business by money fraudulently obtained from
banks, among them the People's National Bank, one of the plain-
tiffs, upon false statements as to their financial condition, know-
ingly made for the purpose of deceiving and thereby obtaining
credit.    During this time, Albert Loeffert, one of the defend-
ants, (a son of George and a brother of John) was the superin-
tendent and manager of the mill, and certainly knew the condition
of the firm as early as February, 1895, if not before, probably
as early as 1892, and actively coöperated with the partners
(George and John) in placing their property in a condition for
a dishonest failure.    The evidence shows that Loeffert & Son,
in 1896, owned a planing mill in the Seventh ward of Allegheny
city, in which Albert resided, and superintended the business
done there, when the firm concluded to remove and build a new
mill in Sharpsburg.    At this time Albert owned a house and
lot in Allegheny.    The lot cost him $1,300, and upon this he
erected a house costing, according to his evidence, some $1,400
or $1,500, the material for which he got from George Loeffert &
Son, and which he swears he fully paid for; and as there is no suf-
ficient evidence to the contrary, I assume it to be true, although
his evidence upon that point is not as clear and satisfactory as
it might be.    This property Albert traded for some lots in
Sharpsburg, upon which Loeffert & Son, in 1896, built an ex-
tensive planing mill, costing some $15,000; about $8,000 being
for new machinery and $7,000 for the building.    There was no

sale or agreement for sale of this lot to the firm by Albert, but there was a verbal agreement for a lease for one year at $100 per month, and there was no arrangement or agreement by which Loeffert & Son were to have any right or claim to the buildings thereon after the termination of this verbal lease; so that so far as appears at the end of the year's lease the title and owner-ship of the lot and buildings would be in Albert. It also ap-pears that Albert somehow became the owner of other lots in Sharpsburg upon which he had erected dwelling houses. One on Third street, worth some $3,500, and another on First street, worth some $3,500, a considerable part of the cost of which was paid or settled directly or indirectly by George Loeffert & Son, and for which there is no sufficient evidence to justify me in concluding that Albert ever paid, or was held or intended to be held chargeable therefor. It seems quite clear to me that Albert perfectly understood and participated in the purpose of the firm to put their property as far as practicable beyond the reach of creditors, and the only serious question remaining is: How much of the money or property of Loeffert & Son was, in pursuance of such design, actually expended upon these lots and buildings of Albert? The evidence is quite sufficient, in my opinion, to prove that at least $1,648 in money and material were put into and paid on account of work done on the house on Third street, described in paragraph 2 of plaintiffs' bill, to wit:

| | |
|---|---:|
| Lumber and mill work, Deise's evidence, | $ 800 00 |
| Carpenter work (Love), | 260 00 |
| Painting (Hawkins), | 93 00 |
| Digging cellar (Love), | 20 00 |
| Plastering (McKibben), | 135 00 |
| Plumbing (Folsom), | 340 00 |
| | $ 1,648 00 |

And on the First street house, described in paragraph 3 of plaintiffs' bill, the sum of $2,132, to wit:

| | |
|---|---:|
| Lumber and mill work, | $ 1,000 00 |
| Carpenter work (Hawkins), | 450 00 |
| Painting (Hawkins), | 150 00 |
| Plastering (McKibben), | 230 00 |
| Roof, | 302 00 |
| | $ 2,132 00 |

To the above amount furnished by Loeffert & Son, on account of the house on Third street, I am asked by plaintiffs to add $837.31, the amount paid out by Albert Loeffert himself on account of that building, and also $1,910, money paid by him on account of the building on First street, because these moneys came from Loeffert & Son, furnished and given by them to Albert fraudulently and without consideration. But while it is possible that such fact to a greater or less extent may be true, I cannot find evidence to justify me in coming to such a conclusion, and therefore decline to find such to be the fact. I therefore find as a fact that the said sum of $1,648 was put into the Third street house (the title to which is in Albert Loeffert) by George Loeffert & Son, with the knowledge and consent of Albert Loeffert, for the purpose of secreting the same from the creditors of said firm, and that the further sum of $2,132 was with a like purpose and with the knowledge of Albert Loeffert put into the First street house, the title to which is in Albert Loeffert. I am also of opinion and find as a fact from the evidence that the mortgage given by Mrs. Mary A. Reifenrath to George Loeffert was assigned to Albert Loeffert in pursuance of a like purpose, and without sufficient consideration, for the purpose of concealing the assets of George Loeffert & Son from their creditors, but am of opinion that plaintiffs are not in a position to enforce their claim in this proceeding, they never having issued executions on their judgments. The mill property mentioned and described in the fourth paragraph of plaintiffs' bill has been sold at sheriff's sale, and there is no evidence in regard to it which indicates that any of the defendants have now any claim to or interest therein.

It will appear, from an examination of the testimony of Albert Loeffert, that he claims to have paid for all the moneys and materials loaned and advanced to him and for his benefit by George Loeffert & Son, and that he had no knowledge of the insolvency of the firm till about the time of the failure, and that his part of the transaction, from first to last, was perfectly fair and honest. And if we accept his evidence as true, there was nothing in his participation in the business of Loeffert & Son, or in connection with their failure, that was either dishonest or improper; but I have been constrained, by a consideration of all the evidence in the case, to come to the conclusion that his

testimony is not entitled to any consideration, and have therefore refused to give credit to it in coming to the foregoing conclusions as to the facts of this case.

### LAW OF THE CASE.

I am of opinion that equity has jurisdiction under the facts of this case. Where no debt has been created between parties to a fraudulent transaction, and the personal property of the judgment debtor has merged in and become a part of the real estate of another in this way, the appropriate, if not the only, remedy is to fasten the judgment upon the real estate to the extent of the judgment debtor's property thus made part of the realty: Wait on Fraudulent Conveyances; Isham v. Schafer, 60 Barb. (N. Y.) 330. And the same principle seems recognized in our own state in Peiffer v. Lytle, 58 Pa. 386, and Karstorp's Appeal, 158 Pa. 30. See also Lynde v. McGregor, 13 Allen (Mass.), 182.

But this will not give us the right to decide the question of ownership of the Reifenrath mortgage. If an execution attachment had been issued, it may be that the question could have been disposed of in this proceeding; but the plaintiffs have no more right to the proceeds of that mortgage than any other creditors. Their judgments are no lien, nor can they be made a lien, upon it or upon the land upon which it is a lien; and in my opinion the only way of reaching the money secured by that mortgage is by the ordinary proceeding of execution attachment.

Let a decree be prepared by counsel sec. reg., declaring the judgments of plaintiffs to be liens upon the property described in plaintiffs' bill, to wit: Upon the property described in the second paragraph, the sum of $1,648, and upon the property described in the third paragraph, the sum of $2,132, and that defendants pay the costs, and that the sheriff be directed to sell and dispose of said property to the extent of said liens and costs, as in other cases of execution upon real estate.

The court entered the following decree:

And now, June 24, 1897, this cause came on to be heard and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the judgment of People's National Bank against

George Loeffert & Son, entered at D. S. B. No. 278, September term, 1896, for $25,673, shall attach to and become a valid and subsisting lien against the real estate of Albert L. Loeffert, described in paragraph 2 of the plaintiffs' bill, to wit: lot No. 156 in Aspinwall Land Company's plan, in the sum of $1,495.45, with the same force and effect as though said judgment had been entered personally against the said Albert L. Loeffert.

2. That said judgment of People's National Bank shall attach to and become a valid and subsisting lien against the real estate of said Albert L. Loeffert described in paragraph 3 of the plaintiffs' bill, to wit: lots Nos. 62 and 63 in Aspinwall Land Company's plan, in the sum of $1,934.65, with the same force and effect as though said judgment had been entered personally against the said Albert L. Loeffert.

3. That the judgment of E. J. Larkins against George Loeffert & Son, entered at C. P. No. 361, December term, 1896, for $2,620.30, shall attach to and become a valid and subsisting lien against the real estate of the said Albert L. Loeffert, described in paragraph 2 of plaintiffs' bill, to wit: lot No. 156 in Aspinwall Land Company's plan, in the sum of $152.55, with the same force and effect as though said judgment had been entered personally against the said Albert L. Loeffert.

4. That the said judgment of E. J. Larkins shall attach to and become a valid and subsisting lien against the real estate of Albert L. Loeffert described in paragraph 3 of plaintiff's bill, to wit: lots Nos. 62 and 63 in Aspinwall Land Company's plan, in the sum of $197.35, with the same force and effect as though said judgment had been entered personally against the said Albert L. Loeffert.

That an execution be issued directed to the sheriff of Allegheny county, under and pursuant to which the said two pieces of real estate shall be advertised and sold the same as real estate is sold on a writ of fieri facias—said sale to take place on the first Monday of September, 1897, at ten o'clock A. M. And it is further ordered and decreed that the funds arising from the said sale shall be distributed by the sheriff as follows:

1. To the payment of the costs of sale and the costs of this proceeding.

2. To the amounts awarded to the plaintiffs under this decree pro rata. The balance, if any, to Albert L. Loeffert. [15]

*Errors assigned* among others were (1) refusal of motion to dismiss bill; (15) in entering the above decree.

*J. A. Wakefield*, for appellants.—Keeping in mind that the equity courts of Pennsylvania have only such jurisdiction as is conferred by statute, and do not possess general chancery powers, we at a glance perceive that this case can by no possibility come under any of the heads of equity jurisdiction, unless it be the one of fraud. It is apparent on the face of the bill here that the case is not one where relief is sought on the ground of fraud. The plaintiffs have asked and had their remedy against the defendants, George Loeffert & Son, in an action at law: Bakewell & Kerr v. Keller, 11 W. N. C. 300.

But the bill was not only unwarranted by reason of the want of jurisdiction in equity to entertain a bill of discovery, and unnecessary by reason of there being no obstruction to an execution by attachment or fi. fa. as the plaintiffs might elect, it was also unwarranted and unnecessary by reason of there being a statutory remedy, complete in every essential, fitted to meet every need of the plaintiffs, to wit: the act of June 16, 1836, relating to executions which authorizes bills of discovery: Shaffer v. Watkins, 7 W. & S. 219; Page v. Heath, 56 Pa. 215; Girard Nat. Bank's App., 13 W. N. C. 101.

But, if upon any conception of the case it could be held that equity might entertain the bill in this case as a creditor's bill, the plaintiffs have not shown, nor even alleged, that they have exhausted their legal remedies, or that the defendants have not property out of which the judgment might be satisfied by execution, and the court below was, therefore, without jurisdiction on the face of the bill: Suydam v. Insurance Co., 51 Pa. 394; Angell v. Draper, 1 Vern. 399; Shirley v. Watts, 3 Atk. 176; Wiggins et al. v. Armstrong et al., 2 Johns. Ch. 144.

*R. B. Ivory*, for appellees.—The very ground upon which we base our right to relief is fraud of the grossest character, which is alleged in the bill and found by the court below, and, therefore, we submit that equity has jurisdiction: Barto's App., 55 Pa. 386; Isham v. Schafer, 60 Barb. 317; Wait on Fraudulent Conveyances, page 49; Lynde v. McGregor, 13 Allen, 182; Caswell v. Hill, 47 N. H. 415; Athey v. Knotts, 6 B. Mon. 24

Divine & Brown v. Steele, 10 B. Mon. 323; Kirby v. Bruns, 45 Mo. 234; Adams v. Beach, 1 Phila. 99; Page v. Heath, 56 Pa. 224; 1 Troubat & Haley's Pr., sec. 91.

The court below had jurisdiction to make the decree entered in the case: Brightly's Eq. Jur., p. 532; 1 Troubat & Haley's Pr., sec. 143; Brightly's Eq. Jur., sec. 745, p. 533.

OPINION BY MR. JUSTICE FELL, January 3, 1898:

Briefly stated, the facts upon which the decree is based as found by the court are these: In 1896 two of the defendants, John and George Loeffert, were in the planing mill business as partners. They were then and had been for several years irretrievably insolvent, and had carried on their business with money fraudulently obtained by false statements as to their financial condition. The third defendant, Albert Loeffert, was the superintendent of their mill. He knew of their financial condition, and actively co-operated with them in secreting their property preparatory to a dishonest failure. In pursuance of the conspiracy formed, houses were built upon lots before owned by Albert or procured by him for the purpose with his own money. The lumber and mill work were furnished directly by the firm, and they paid for a part at least of the other materials and for the labor, with the intent thus to secrete their property from their creditors. No debt was created between the parties by the transaction; it was not intended that Albert should pay for the materials furnished by the firm or repay the money they had expended in the construction of the houses. It was a scheme into which all three entered to put the property of the firm beyond the reach of its creditors. This finding seems to be fully sustained by the testimony.

The plaintiffs are judgment creditors of the firm, and one of the prayers of their bill was for a decree that their judgment be declared a lien on the real estate on which improvements had been made to the extent to which their debtor's property had become merged in and a part of the realty. This prayer was granted.

The general jurisdiction of courts of equity to grant relief on the ground of fraud has been freely exercised to defeat the conveyance of property by insolvent debtors in fraud of creditors in cases where the law furnishes no adequate remedy. It has been

exercised in numerous cases where a debtor, with intent to defraud his creditors, has conveyed his land directly to another, or has purchased land or paid part of the consideration for land purchased in the name of another, or has made improvements on the land of another, as well as for the removal of fraudulent liens and incumbrances. Where the estate or interest of the debtor has been placed beyond the reach of the ordinary process of execution, he has been held to have an equitable interest which will be made subject to his debts. Although none of our cases are directly in point, the principle stated has been recognized in Suydam v. Northwestern Ins. Co., 51 Pa. 394, Barto's Appeal, 55 Pa. 386, and Fowler's Appeal, 87 Pa. 449. In Wait on Fraudulent Conveyances and Creditors' Bills, section 26, it is said : " An extreme illustration of the disposition of courts to favor creditors is the familiar and salutary rule that improvements placed by the debtor upon the real property of another, acting in concert with him, and to defraud creditors, can be followed, and the realty charged in favor of the creditors of the debtor with the value of such improvements." And in Bump on Fraudulent Conveyances, page 242 : " If a debtor uses his personal property upon the real estate of another, with the knowledge and consent of the owner, so that it becomes a part of such realty, for the purpose of defrauding his creditors and preventing them from obtaining satisfaction of their demands, they may still follow the property into the hands of the owner of the premises thus benefited, and fasten their claims upon such premises to the extent of the debtor's property so appropriated. If a debt, however, has been created between the parties, the creditors can only have the debt appropriated to the satisfaction of their demands ; but if no debt has been created, the appropriate remedy is to fasten their claims upon the real estate to the extent of the debtor's property thus made part of the realty." Among the many cases which support this proposition are Isham v. Schafer, 60 Barb. 317 ; Lynde v. McGregor, 95 Mass. 182 ; Dietz v. Atwood, 19 Ill. App. 96 ; Foster v. Knowles, 42 N. J. Eq. 226.

As the debtors had no interest in the land which their personal property went to improve, a decree making a judgment against them a lien upon the land does not seem regular. If they had conveyed the land or taken title in the name of another

a reconveyance might have been ordered or the conveyance set aside and their judgment decreed to be a lien. This would have made a judgment against them a lien on their own property which they had fraudulently concealed. A decree in this case ascertaining the amount of the debtor's property which had become merged in the real estate, and awarding a lien for the amount, would be more logical and more in harmony with chancery practice than the one made, and it would as effectually secure the rights of the plaintiffs. Such a lien would be by virtue of the decree, and the anomaly of making a judgment against one person a lien on the property of another would be avoided. The same result has been effected by this decree. A sale has been made under it, and the interests of purchasers are now to be considered. While not approving the form of the decree, we are not disposed to modify or set it aside, as it does substantial justice. The plaintiffs might have asked for more; while they are content with what they got, the defendants have no ground for complaint.

The objection that the plaintiffs did not allege that they had exhausted their legal rights against the defendants appears to have been first made on the argument in this Court. Whatever force there might have been in the objection if made at the proper time and in a proper manner, it cannot be considered now. The motion at the hearing to dismiss the bill for the reason that there was an adequate remedy at law was not supported on the ground that the bill was defective, and the defects now alleged were not brought to the attention of the court at any time. The court had general jurisdiction of the subject-matter, and it was competent for it to grant the relief sought, and it is now too late to object to defects in the bill of this character. " . . . . An objection on the ground of jurisdiction must be taken either by demurrer or plea before answer, otherwise the court will entertain the suit, although the defendant may object to it at the hearing, unless it is a case in which no circumstances whatever can give the court jurisdiction:" Daniell's Chancery Practice and Pleading, p. 631.

The decree is affirmed at the cost of the appellants.