## McKAY v. WEAGER.

(Supreme Court, Special Term, Monroe County. December 8, 1911.)

1. BANKRUPTCY (§ 166*)—"PREFERENCE"—ACTS CONSTITUTING.

A bankrupt within four months of adjudication of bankruptcy conveyed his interest in mill property to his wife, who paid full value. He owned no other property at the time, and the wife knew his financial condition, and that the conveyance was made to enable him to pay a creditor, and thereby relieve an indorser from liability. She had no use for the property conveyed. *Held,* that the conveyance was a "preference" within the bankruptcy act, and must be set aside at the suit of the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498–5499; vol. 8, p. 7759.]

2. BANKRUPTCY (§ 165*)—CONVEYANCES BY BANKRUPT—FRAUD—EVIDENCE.

Where an insolvent more than four months before adjudication of bankruptcy purchased land, and procured the taking of the conveyance in the name of his wife, who was his creditor, and who indorsed on her claim the purchase price, and there was no bad faith on the part of the husband or wife, the conveyance could not be set aside by the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

3. BANKRUPTCY (§ 139*)—CONVEYANCES BY BANKRUPT—FRAUD—EVIDENCE.

Where an insolvent husband expended money of his own in improving a lot of his wife, who knew of his insolvency, the amount expended by the husband must at the suit of his trustee in bankruptcy be declared a lien on the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 193, 198, 199, 210–225; Dec. Dig. § 139.*]

4. BANKRUPTCY (§ 154*)—IMPROVEMENTS BY BANKRUPT ON PROPERTY OF WIFE —LIEN—SET-OFF.

Where the wife of an insolvent, within four months of adjudication of bankruptcy, purchased his property with knowledge of his insolvency and of his purpose to pay a creditor and thereby relieve an indorser from liability, she was not entitled to a set-off for the price paid as against a lien in favor of the trustee in bankruptcy impressed on her real estate for the amount expended by the husband in making improvements thereon.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 451–455; Dec. Dig. § 154;* Set-Off and Counterclaim, Cent. Dig. § 123.]

Action by Clarence W. McKay as trustee of Irving B. Weager, bankrupt, against Marilla E. Weager. Judgment for plaintiff.

---

Charles Van Voorhis, for plaintiff.
David M. Dean, for defendant.

SUTHERLAND, J.   There are two causes of action set forth in the complaint.   The first one alleged is substantially that on the 21st day of February, 1911, the bankrupt, being insolvent, conveyed to his wife his interest in certain mill property in Interlaken, Seneca county, intending thereby to hinder and defraud his creditors, in which intent she participated.

[1] It appears that the defendant paid $1,000 for her husband's interest in this mill property, subject to a prior mortgage.   He owned no other property at that time.   The amount paid is all that her husband's interest was worth.   The $1,000 was given to her husband in the form of a New York draft, which he used to take up a promissory note for that amount held by the Lincoln National Bank of Rochester, on which one W. W. Boyer was indorser.   The defendant was not liable on said note.   The transfer of the mill property and the payment of said $1,000 was accomplished about two weeks before the adjudication of bankruptcy.

I am convinced that at the time the transfer was effected the defendant knew that her husband was bankrupt, owing many thousands of dollars to unsecured creditors, and knew that he desired to sell her the mill property in order to pay said note, and thereby relieve the indorser from further liability.   She also knew that he had nothing left for his creditors, and must have known that in the nature of things the commencement of bankruptcy proceedings could not be long delayed.   She had no use for the mill property, and only took it in order to make the shift which was made, and in effect to devote the mill property to the payment of said note in preference to other claims against her husband.   As this took place within four months of the adjudication in bankruptcy, the preference is condemned by the statute.   Under such circumstances, she should not be allowed to retain the interest in the mill property conveyed to her by her husband to effect such purpose.   Bank of Wayne v. Gold, 146 App. Div. 296, 130 N. Y. Supp. 942.   As to this cause of action, the plaintiff is entitled to a judgment declaring that the conveyance to the defendant by her husband is void as to the plaintiff.

[2] The second cause of action relates to the residence property in the village of Interlaken occupied by the defendant and her husband. On or about April 20, 1906, the defendant's husband purchased the lot on which the house now stands for the sum of $600, which consideration he paid.   The deed was taken in the name of the defendant, and the title has ever since remained in her.   The evidence indicates that defendant's husband was then insolvent, and some of the indebtedness which he was then owing still subsists.   At the time of said purchase the bankrupt was indebted to his wife for $1,200 advanced to him by her many years before.   The $1,200 was raised by placing a mortgage upon defendant's real property in Cato, Cayuga county.   Her husband paid the interest upon said mortgage from the time he had the avails thereof down to 1908, when the property was sold.   These payments of interest for the benefit of the wife kept the debt to her

alive and enforceable. The $600 paid by him for the lot in 1906 was credited and allowed by her as a payment upon the $1,200 indebtedness; and, in taking the deed in her name, I am satisfied that there was no bad faith upon the part of either the defendant or her husband.

In addition to the $1,200 raised by mortgage on the Cato property, she also loaned her husband $200, which she received from a relative. This left $800 due from him to her after purchase of the village lot, and $300 of this he paid by purchasing merchandise for her in Rochester, and the balance of $500 was credited to him upon the transfer of some oil leases, leaving then no indebtedness from him to her for borrowed money.

The conclusion that the purchase of the lot in 1906 and the payment by him of the consideration price was not in fraud of creditors does not dispose entirely of the second cause of action.

[3] It seems that in 1908 and 1909 an extensive house was built upon said village lot. Various sums of money aggregating $6,800 were turned over by the defendant to her husband, being moneys either on deposit in the Cayuga County National Bank to the credit of the defendant, or borrowed by her upon notes while the house was building, or raised by mortgage upon said residence property. These moneys were placed under the control of the defendant's husband with the understanding between him and her that such moneys or similar amounts were to be applied to the cost of the dwelling house. The identical moneys were not all so applied. The greater part was used by her husband in the course of his business as a produce merchant or for various other disbursements which he was called upon to make; and other money of his own was used by him in payment of the bills for labor and material for the house. A note for $1,000 in addition to the $6,800 was given by her to him (which he used to take up other paper of his at the Traders' National Bank of Rochester), as an equivalent for money to that amount which he had disbursed upon the house ,in excess of the amounts she had previously furnished to him for that purpose. This makes $7,800 furnished by her for the house, or as an offset to the moneys of his own which he put into the house. The house and other improvements to the residence property such as walks, etc., cost $8,951.80, which exceeds the $7,800 furnished by her by $1,151.80, all of which excess he paid with moneys of his own. During all the time the house was building he was actually insolvent; and the defendant, being very familiar with his business affairs, undoubtedly knew his condition, and that he was enhancing the value of her property by moneys of his own, which were thereby put out of the reach of his creditors. To that extent his creditors are defrauded. It would seem to be contrary to equity that she should be thus enriched at their expense; and for the amount of that excess a lien should be impressed upon the property in favor of the plaintiff. Bump on Fraud. Conv. § 218; Dietz v. Atwood, 19 Ill. App. 96; People's Nat. Bank v. Loeffert, 184 Pa. 164, 38 Atl. 996.

[4] The mill lot transaction being set aside, it may be asked why the court should not allow the $1,000 paid by her for the mill lot, the consideration now falling as an equitable offset to the $1,151.80 excess payments upon the house? The purchase of the mill lot from

him by her was good as between him and her.  It is invalid only because it was done to create a preference on the eve of bankruptcy proceedings, and is a transaction which the trustee in bankruptcy is permitted by the statute to overturn.  There may be serious question as to any legal liability in favor of the husband, in his own right, against the wife for the excess paid on the house.  Before the trustee was appointed, certainly there did not exist, as between husband and wife, offsetting claims, namely, a debt of $1,151.80 for excess payments by him upon her house, and a counter indebtedness of $1,000 from him to her for money paid by her for a deed of the mill lot, so one sum does not offset the other as a matter of law; but equitable principles must be brought into operation if any set-off is to be allowed.

I do not think the defendant is in a position to successfully invoke the aid of a court of equity in this respect.  She was not an unwitting and innocent party to the creation of a preference in favor of the Lincoln National Bank and Boyer by the change of title of the mill lot to her.  On the contrary, there was an intentional invasion of the rights of creditors, when bankruptcy was imminent and expected.  Furthermore, she has endeavored to make it appear that the house only cost about $7,800.

My conclusion, therefore, is that on the second cause of action the judgment should be that a lien be impressed by the judgment upon the residence property for the payment to plaintiff of $1,151.80, with interest from the commencement of the action, and costs; and that a referee be appointed to sell the premises to satisfy said lien in accordance with the practice in similar cases. .